CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/31/2025

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| FRANK VEGA, | CASE NO. 6:24-cv-00020 |
| *Plaintiff*, |  |
| v. | **MEMORANDUM OPINION** |
| AMURCON REALTY COMPANY, *et al*., |  |
| *Defendants*. | JUDGE NORMAN K. MOON |

This case arises from Plaintiff Frank Vega's allegations that he suffered unlawful discrimination and retaliation when he was terminated from his temporary worker position at a property management company. His complaint names a variety of defendants, including the temporary employment staffing agency and the company where he worked five shifts in January 2023. While the Court must liberally construe a pro se plaintiff's filings, the Defendants' motions to dismiss the Plaintiff's First Amended Complaint are granted for the reasons provided below. Moreover, the Plaintiff moves for leave to file a Second Amended Complaint. However, the Plaintiff's amendments fail to state a claim upon which relief can be granted. Thus, such an amended complaint would be futile and his motion is denied.

## I. MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

### A. Background

The facts alleged in the Plaintiff's First Amended Complaint, Dkt. 33 ("FAC"), are accepted as true for the purposes of considering a motion to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).[1]

The Plaintiff is a 62-year-old Latino man of Puerto Rican descent. FAC at ¶ 5. He has a physical disability related to a back surgery that occurred in April 2021. *Id*. He was a "carpenter by trade" up until his back procedure. *Id*.

On December 2, 2022, PeopleReady Inc. ("PeopleReady") – a temporary employment agency whose parent company is TrueBlue Inc. ("TrueBlue") – hired the Plaintiff as an "at-will temporary employee." *Id*. at ¶¶ 7-8, 13, 21. During his interview with PeopleReady, the Plaintiff said he was "looking for part time work being that I'm on early retirement because of my back surgery I had in April 2021." *Id*. at ¶ 25. The interviewer informed the Plaintiff that PeopleReady primarily had full time work available but that he could still apply in case the agency received part time work. *Id*. at ¶ 26.

During the interview he "requested copies of new hire paperwork." *Id*. at ¶ 22. The interviewer said, "there's no way for us to make copies for you." *Id*. at ¶¶ 23, 30. PeopleReady staff also "never gave [the Plaintiff] any notice that he would receive his new hire paper work whether by U.S. mail or email." *Id*. at ¶ 24. Nevertheless, the Plaintiff states that he completed an electronic version of the new hire paperwork. *Id*. at ¶ 29. He "read and electronically signed the new hire paper work." *Id*. at ¶ 29. The new hire paperwork was lengthy – approximately 20 pages long - and included an arbitration agreement with a 30-day "opt out" period. *Id*. at ¶¶ 27-28. Thus, even though the Plaintiff signed the paperwork, he hoped to receive a paper copy so

---

[1] Portions of the Plaintiff's First Amended Complaint contain duplicative recitations of his factual assertions. This Opinion cites to relevant portions of the complaint but does not cite to every instance in which an alleged fact appears.

that he could "carefully review/understand the terms of the agreement and make a decision within the (30) thirty day opt-out deadline." *Id*. at ¶ 29. He was "extremely disappointed" when PeopleReady staff did not give him printed copies of the new hire materials. *Id*. at ¶ 31. He asserts that not having printed copies was unfair because he did not have an "opportunity to review and understand the terms before the (30) day opt out deadline within the agreement." *Id*. at ¶ 32. Still, the Plaintiff later received an email copy of the new hire paperwork on December 13, 2022. *Id*. at ¶ 265.[2]

On January 16, 2023, Jody Vantassell, a manager at PeopleReady, notified the Plaintiff about a potential placement at Amurcon Realty Company ("Amurcon") - a property management company. *Id*. at ¶ 78. The Plaintiff asked her if the job was long term. *Id*. She said that it was a "long term job opportunity." *Id*.

PeopleReady then assigned the Plaintiff to do part-time maintenance work for Amurcon at Wesley Apartments in Lynchburg, Virginia. *Id*. at ¶¶ 6, 34. On his first day, January 18, 2023, the Plaintiff met with Michael Barnes, an Amurcon maintenance assistant with "supervisory authority," at an office at the apartment complex. *Id*. at ¶¶ 37, 44. The Plaintiff was to work three days a week from 9 a.m. to 3 p.m. with a 30-minute lunch break. *Id*. at ¶ 41. Barnes described the job duties, which would include picking up trash, cleaning empty units for new residents, and repairing cabinets, light switch wall plates, and light fixtures. *Id*. at ¶¶ 39, 42, 43.

The Plaintiff told Barnes, "this job is perfect for me, being that I had to take early retirement because of my lower back surgery I had back in April 2021 because of a disability work related injury. I have a thirty five pound lifting limit and bending." *Id*. at ¶ 43. Barnes

---

[2] Plaintiff contends that he "accidentally discovered" this email "[s]ometime after February 10, 2023." FAC at ¶ 265. But that does not negate his statement that the email was dated December 13, 2022 – within the 30-day "opt out" period following his hiring on December 2, 2022 – and he does not provide any explanation for why he did not review the materials around the time he received the email. *Id*. at ¶¶ 21, 28, 265.

"offered him an accommodation which they both agreed upon, which was for [the Plaintiff] to sit in the office and rest his back if he needed to." *Id*. at ¶ 44. The Plaintiff "accepted this as a reasonable accommodation." *Id*. at ¶ 45.

The Plaintiff also alleges there was some discussion on his first day about potential employment at Amurcon. At one point he asked Barnes about "the time frame" that he "had to wait" before he could be "hired." *Id*. at ¶ 45. Barnes said, "about ninety days." *Id*. The Plaintiff stated he planned to stay with the company and Barnes said, "that's fine with me." *Id*. At the end of his first day, Rebecca Cannady, an Amurcon employee who the Plaintiff identifies as a manager, asked Barnes whether the Plaintiff was "going to work out." *Id*. at ¶¶ 16, 46. Barnes nodded and said, "yeah he's going to work out." *Id*. The Plaintiff said to Cannady, "I was here to stay on with the company." *Id*. He describes the interaction with Cannady as him "verbally applying for permanent employment." *Id*.

When the Plaintiff asked about how payroll would work, Barnes informed him that Cannady would submit the Plaintiff's hours but that PeopleReady would pay the Plaintiff's salary. *Id*. at ¶ 47.

On the first day, the Plaintiff received a "notification" on his phone that read, "Way to go! You've received a great rating for your excellent work. Thanks for being a ROCK STAR!" *Id*. at ¶ 36. This message was sent through the "PeopleReady JobStack app." *Id*. at ¶¶ 36, 52.

On January 25, 2023, the Plaintiff "aggravated his lower back while picking up trash bags." *Id*. at ¶ 48. When he got back to the office, he told Barnes "that he needed to sit down and take a break because he aggravated his back from lifting the two heavy trash bags." *Id*. at ¶ 49.

Two days later, on January 27, 2023, the Plaintiff again complained to Barnes about his lower back and said he would rest in the office after picking up trash bags at the apartment

complex. *Id*. at ¶ 50. After his shift concluded, the Plaintiff received a notification on his phone stating that he "received a great rating" for his "excellent work." *Id*. at ¶ 52. But then he saw three other notices stating "Job Ticket Canceled" for the dates of January 27, 2023, January 30, 2023, and February 3, 2023. *Id*. at ¶¶ 53-54. These notices informed the Plaintiff that he was removed from "job tickets" for those days. *Id*.

The same day as the ticket cancellation notices, Vantassell called the Plaintiff to inform him that he was being terminated from his posting at Amurcon. *Id*. at ¶¶ 55-56. Vantassell said the Plaintiff had been cut for budgetary reasons. *Id*. at ¶¶ 56-57. More specifically, she said that she had received a call from Cannady at Amurcon and that the reason for his termination was that Amurcon was going over its budget to take on temp employees. *Id*.

The Plaintiff alleges that on January 30, 2023 – three days after he was released from his duties at Amurcon - Vantassell replaced him at Amurcon with "a Caucasian male temp employee." *Id*. at ¶¶ 58, 74. He specifically alleges that the individual who replaced him at Amurcon was Steve Glass, a Caucasian man with a disability. *Id*. at ¶ 80. The Plaintiff "believes this was racially discriminatory, and retaliatory for engaging in protected activity" because he "was the only Latino employee working on the job site at the time in question, and no other white employee, white or female, had been discharge[d] in the manner that he was discharged." *Id*. at ¶ 58.

At some point after being informed that he would no longer be working with Amurcon (the exact date is unclear from the FAC), he went to the PeopleReady office to talk with Vantassell about his termination. *Id*. at ¶ 60. Vantassell informed him that Amurcon "didn't have any issues" with his work and they thought he was a "good worker." *Id*. When asked about the work ratings received on the mobile phone application, Vantassell said that the ratings came from

5

Cannady, at Amurcon. *Id*. at ¶ 61. Additionally, when the Plaintiff asked if he could return to working at Amurcon, Vantassell said he could as soon as she heard something from them. *Id*. at ¶ 62. The Plaintiff told her that the work with Amurcon was a "perfect job" because it was near his house, part-time, and he was "on early retirement" because of a spinal fusion surgery. *Id*. at ¶ 63.

The Plaintiff proceeded to show Vantassell x-ray photos of his lower back surgery on his cell phone. *Id*. at ¶ 64**.** He also told her that his termination from the Amurcon posting was "very suspicious" and "in retaliation" because he complained to Barnes about aggravating his lower back while picking up trash bags. *Id*. at ¶¶ 64-65. Vantassell asked the Plaintiff if he wanted to see a company nurse. *Id*. at ¶ 66. He declined the offer. *Id*.

After the end of his work at Amurcon (the exact date is unclear), the Plaintiff visited the apartment complex to meet with Glass, the temporary employee who replaced him. *Id*. at ¶¶ 68, 80. The Plaintiff asked Glass for his phone number and if he could get the Plaintiff a copy of the Amurcon Employee Handbook. *Id*. at ¶ 68. It is unclear if the Plaintiff obtained this from Glass. Then, the Plaintiff stopped at the PeopleReady office to ask for copies of the PeopleReady employee handbook and his job application. *Id*. at ¶ 69. He did not receive one. Melissa Wommack, a PeopleReady manager, told the Plaintiff that "we don't give them out to employees, their [sic] company property." *Id*. at ¶¶ 16, 70.

On February 10, 2023, Vantassell called the Plaintiff to apologize for not telling him the "truth" about why he was cut from Amurcon. *Id*. at ¶¶ 67, 72. She said that she did not want to hurt his feelings and that actual reason Amurcon provided was that the Plaintiff was "doing too much talking and not enough work." *Id*. at ¶ 73.

He subsequently filed complaints with the EEOC, which issued right-to-sue letters. *Id*. at Ex. A.

As a result of the events described above, Plaintiff alleges the following counts in his FAC:

- Race and National Origin Discrimination Under Title VII of the Civil Rights Act of 1964 (Count 1)
- Retaliation Under Title VII (Count 2)
- Race Discrimination Under 42 U.S.C. § 1981 (Count 3)
- Retaliation Under 42 U.S.C. § 1981 (Count 4)
- Disability Discrimination Under 42 U.S.C. § 1981(a)(2) (Count 5)
- Disability Discrimination Under the Americans with Disabilities Act (ADA) (Count 6)
- Retaliation Under the ADA (Count 7)
- "Claim for Retaliation in Connection With At-Will Employment contractual Relationship in Violation of 'Make and Inforce [sic]' § 1981" (Count 8)
- "Claim for Individual Defendant Liability Retaliation on Violation of Section 1981" (Count 9)
- "Claim for Unenforceable Arbitration Agreement" (Count 10)

The FAC does not identify the specific defendants each count is asserted against. The Court will assume the purported claims for relief are directed at all defendants unless it is obvious from the context which defendant a count applies to.  Two groups of defendants – one associated with PeopleReady (PeopleReady, Inc., TrueBlue, Inc., Jody Vantassell, and Melissa Wommack) and another with Amurcon (Amurcon Realty Company, Michael Barnes, and Rebecca Cannady) – move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkts. 28, 37. For simplicity, they are referred to as the "PeopleReady Defendants" and the "Amurcon Defendants."

Finally, the Court makes a preliminary note that the Plaintiff has not engaged with most of the Defendants' arguments. He never filed formal responses to the motions to dismiss. Instead, it appears that he believed that by filing a Second Amended Complaint he had, in effect, fixed his complaint to address the arguments raised in the motions to dismiss. Dkt. 47 at 2 (conceding that he "chose not to oppose" the Amurcon Defendants' motion to dismiss the FAC and "[r]ather … moved to amend" by filing his proposed SAC). When a plaintiff fails to address a meritorious argument in a motion to dismiss, the Court may consider the plaintiff to have waived that

argument, *see, e.g.*, *Bills v. Va. Dept. of Educ.*, 605 F.Supp.3d 744, 755 (W.D. Va. 2022). However, the Fourth Circuit has cautioned that district courts must still review a motion to dismiss – even those that are unopposed – "to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014). Indeed, the Fourth Circuit has approvingly cited language from a First Circuit decision stating that the failure to respond to a Rule 12(b)(6) motion is not a "procedural default" because "the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Id.* (citing *Pomerleau v. W. Springfield Pub. Sch.,* 362 F.3d 143, 145 (1st Cir. 2004). Consistent with these principles and the Plaintiff's pro se status, the Court proceeds to analyze the merits of the motions to dismiss.

**B. Legal Standards**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. It does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), accepting all well pleaded factual allegations in the complaint as true and taking all reasonable inference in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). A court need not accept as true "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments." *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir.

2018) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.

2009) (internal quotation marks omitted)).

Courts must construe the filings of *pro se* litigants liberally. *Haines v. Kerner*, 404 U.S.

519, 520 (1970). Although a *pro se* complaint may be inartfully pleaded, it "must be held to less

stringent standards than formal pleadings drafted by lawyers." *King*, 825 F.3d at 214. Even so, a

*pro se* complaint must state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009). "District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278

(4th Cir.1985). They are not obligated "to conjure up questions never squarely presented to

them," nor can they be "expected to construct full blown claims from sentence fragments." *Id.*


## C. Plaintiff's claims against the PeopleReady Defendants are time-barred

The PeopleReady Defendants argue that the Plaintiff's claims against them are time-

barred because he filed his complaint after a one-year limitations period in his employment

agreement expired. Dkt. 28-1 at 6. A Rule 12(b)(6) motion generally "does not resolve contests

surrounding … the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-

44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) and

the assertion that a plaintiff's claim is time-barred is an affirmative defense. However, the Fourth

Circuit has noted that "where facts sufficient to rule on an affirmative defense are alleged in the

complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This

principle only applies if all facts necessary to the affirmative defense 'clearly appear[ ] on the

face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)

(quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993));

*see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the

statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."). Here, the Plaintiff's FAC is clear about the date of the alleged employment action because he alleges he was "discharged" on January 27, 2023. FAC at ¶ 51. Accordingly, there is sufficient information on the face of the complaint to consider whether the Plaintiff adhered to the limitations period in his employment contract.

When ruling on a motion to dismiss, "it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d. 700, 705 (4th Cir. 2007)). A document is "integral to the complaint" when the complaint "relies heavily upon its terms and effect." *Goines*, 822 F.3d at 166 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). The rationale underlying the general rule against considering documents outside of a complaint is that a plaintiff may lack notice of the materials at issue, but such concerns "are dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *Susan Virginia Parker v. Henry & William Evans Home for Children, Inc.*, 762 Fed. Appx. 147, 153 (4th Cir. 2019) (unpublished) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

Here, the "At-Will Employment & Dispute Resolution Agreement" ("Employment Agreement") attached to the PeopleReady Defendant's motion to dismiss, Dkt. 28-2 (Ex. A), is undoubtedly "integral" to the complaint and the Plaintiff, by his own representations, had notice of it. The Plaintiff did not attach his employment agreement to his complaint. Still, he relied on the agreement's content and effects because he asks the Court to invalidate arbitration provisions

within the agreement. FAC at ¶¶ 250-72. He also alleges there was a "contract of adhesion" and

that he entered it "in a procedurally unconscionable manner." *Id*. at ¶ 262. As the PeopleReady

Defendants correctly observe, the Employment Agreement holds a "central place" in the

Plaintiff's complaint. Dky. 28-1 at 8. The Plaintiff has not called into question the agreement's

authenticity. While he contends that he should have received a paper copy of the agreement, *see,*

*e.g.,* FAC at ¶ ¶ 259-60, he admits that he signed an electronic copy of the "new hire paper

work," which included the agreement. *Id*. at ¶¶ 27-29. He also acknowledges receiving a copy of

the agreement via email on December 13, 2022. *Id*. at ¶ 265. In sum, the Court may properly

consider the Employment Agreement when deciding the PeopleReady Defendants' motion to

dismiss.

　　　The Employment Agreement bears an electronic signature for the Plaintiff dated

December 2, 2022. Dkt. 28-2 at 3. It includes language indicating that it is an agreement between

the Plaintiff and PeopleReady, Inc., its parent company, and their respective employees and

agents. *Id*. at 1. Critically, the agreement's third section contains a limitations provision. *Id*. at 2.

It states in relevant part that he will bring any claim arising from his employment "within one-

year (365 days) of the date of the incident or occurrence giving rise to the claim." *Id*. [3]

　　　In general, the Fourth Circuit has held that "statutory limitations periods may be

shortened by agreement, so long as (1) the limitations period is not unreasonably short" and (2)

---

[3] This limitations period applies to claims "including, but not limited to, claims based on: any
alleged violation of any constitution, federal, state, or local law; claims of discrimination,
harassment, retaliation, wrongful termination or violation of civil rights; claims for wages or
compensation due; or, any claim based in tort, contract, or equity." Dkt. 28-2 at 2. Additionally,
the limitations period "in no way eliminates the effect of the continuing acts doctrine or any
tolling or other equitable doctrines that would otherwise apply, nor does it modify in any way the
time in which an employee may bring a claim before any state or federal administrative agency,
including the EEOC and NLRB." *Id*. at 2.

there is no language in the statute precluding a shortened limitations period. *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 287 (4th Cir. 2007). For example, the Fourth Circuit upheld an arbitration agreement with a limitations period of one year for an antitrust claim that would have otherwise been subject to a four-year statute of limitations. *Id*. at 287-88. More recently (albeit in an unpublished decision), the Fourth Circuit upheld a one-year limitations period in an alternative dispute resolution agreement. *Bracey v. Lancaster Foods LLC*, 838 Fed. Appx. 745, 749 (4th Cir. 2020). The Court rejected an employee's argument that the limitations period would make it difficult for him to exhaust his discrimination claims with the Equal Employment Opportunity Commission before making a demand for arbitration. *Id*.

Here, the reasoning of *In re Cotton Yarn Antitrust Litigation* and *Bracey* support the conclusion that the one-year limitations period is valid. The relevant statutes that the Plaintiff relies on – Title VII, the ADA, and 42 U.S.C. § 1981 – do not bar this shortening of the limitations period, nor has the Fourth Circuit interpreted these statutes as doing so. Accordingly, the limitations period in the Employment Agreement precludes the Plaintiff from bringing his claims against the PeopleReady Defendants (the only claim against them that the Court discusses is whether the arbitration agreement contained in the Agreement was unenforceable)

**D. The Plaintiff has sufficiently alleged that Amurcon was his "joint employer"**

Title VII and the ADA both expressly apply to employers. *See* 42 U.S.C. § 2000e-2(a) (Title VII provisions regarding employment practices that discriminate on the basis of race, color, religion, sex, or national origin); *Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) ("An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant."); 42 U.S.C. § 12112(a) (ADA provision barring disability-

based discrimination by a "covered entity," which is, in turn, defined in 42 U.S.C. § 12111 as "an

employer, employment agency, labor organization, or joint labor-management committee.");

*Smith v. CSRA*, 12 F.4th 396, 412 (4th Cir. 2021) ("The ADA assumes the existence of an

employer/employee relationship."). Thus, a threshold question is whether the entities named in

the FAC were the Plaintiff's employers. It is undisputed that the Plaintiff was employed by the

temporary job agency PeopleReady (and by extension, its parent company TrueBlue). What *is*

contested is whether facts alleged in the Plaintiff's complaint would support a claim based on his

purported status as an employee of Amurcon. Amurcon contends that the Plaintiff failed to

adequately allege it was his joint employer, Dkt. 38 at 6-9.

The "joint employer doctrine" guides the Court's analysis in determining whether the

Plaintiff has sufficiently alleged that Amurcon was his joint employer to survive the motion to

dismiss. In *Butler*, the Fourth Circuit articulated a nine-factor test for assessing whether an

individual is jointly employed by multiple entities:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee
> discipline;
> (3) whether the putative employer furnishes the equipment used
> and the place of work;
> (4) possession of and responsibility over the individual's
> employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for
> the putative employer;
> (6) whether the putative employer provides the individual with
> formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's
> duties;
> (8) whether the individual is assigned solely to the putative
> employer; and
> (9) whether the individual and putative employer intended to enter
> into an employment relationship

793 F.3d at 414.[4] The first three factors are the most important, but no one factor is determinative. *Id*. "[C]ontrol remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." *Id*.

Although the Plaintiff describes Amurcon as a "joint employer" in his complaint, FAC at ¶ 6, the Court is not bound by his legal conclusion and must independently assess the factual allegations.

As for the first *Butler* factor, the implication of the FAC is that Amurcon could effectively "fire" him by requesting that he be removed from the job site. *Id*. at ¶¶ 56-57 (alleging Amurcon terminated him for budget reasons); 72 (alleging that Vantassell informed him that Amurcon "let him go" because he did "too much talking and not enough work"). That said, the FAC includes allegations suggesting that the Plaintiff understood he was not "hired" as a typical employee of Amurcon. The Plaintiff alleges that on his first day he asked, "what the time frame was I had to wait *before I could get hired*." *Id*. at ¶ 45 (emphasis added). But when read in context, a reasonable understanding of this statement is that the Plaintiff desired to become a regular employee of Amurcon instead of a "temporary" employee. Thus, the first factor does not cut decisively in either party's favor.

The second *Butler* factor is favorable to the Plaintiff. Amurcon contends that the Plaintiff only offered conclusory statements in his FAC that certain Amurcon personnel exercised "supervisory authority" over him. Dkt. 38 at 7. But the Plaintiff does allege facts that would be consistent with Amurcon personnel supervising his work. For example, he refers to Barnes as a "maintenance assistance with supervisory authority," *id*. at ¶ 44, and describes how Barnes interacted with him. On his first day, Barnes explained the job duties and schedule to the

---

[4] Although *Butler* involved a Title VII case, the Fourth Circuit has since applied the *Butler* test in the ADA context. *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021).

Plaintiff, *id*. at ¶¶ 38-39, which an employee would expect to hear from their supervisor when beginning a new position. Moreover, when the Plaintiff informed Barnes of a prior back surgery and a lifting limit, Barnes "offered [the Plaintiff] an accommodation … to sit in the office and rest his back if he needed to." *Id.* at ¶ 44. Having the authority to offer such an accommodation would reflect some level of supervision over the Plaintiff. Later on, the Plaintiff alleges that he was informed that Amurcon's management provided the "ratings" that he received on his phone. *Id.* at ¶ 61. The issuance of such ratings would be consistent with a supervisor's ability to assess the quality of an employee's work. There are no clear allegations that PeopleReady played any role in supervising the Plaintiff's daily tasks at the Wesley Apartments. To be sure, the Plaintiff does not make detailed allegations regarding Amurcon's ability to "discipline" beyond the more significant allegation that it removed him from its site. However, the picture he paints in the FAC of his experience at Amurcon suggests that there were at least some Amurcon personnel involved in overseeing and reviewing his work.

The third *Butler* factor relates to whether the putative employer provided the equipment used and the place of work. The facts in the FAC weigh in the Plaintiff's favor because he alleges that he worked at an apartment complex managed by Amurcon, *id*. at ¶¶ 34, 37, and Barnes informed him that any tools he would need for maintenance tasks would be provided. *Id*. at ¶ 42.

Two other *Butler* factors, however, are certainly favorable to Amurcon.  The Plaintiff alleges facts showing that Amurcon submitted the Plaintiff's hours to PeopleReady, which then, in turn, paid the Plaintiff's salary. *Id*. at ¶ 47. There are no other alleged facts consistent with Amurcon maintaining or exercising control over employment records under the fourth factor. The fifth factor, related to the length of work, also weighs against finding Amurcon to be a joint

employer because he completed only five six-hour shifts between January 18, 2023 and January 27, 2023. *Id*. at ¶¶ 34, 39, 41, 51.

At first blush, the ninth *Butler* factor regarding the purported employee and employer's intentions to enter an employment relationship weighs against Amurcon's potential status as a joint employer. The Plaintiff's own representations that he intended to seek employment with Amurcon at some future date could literally be read as a concession that he was not an employee at the relevant time. *Id*. at ¶¶ 45-46. The contract between Amurcon and PeopleReady further underscores that *Amurcon* did not, at the time of the Plaintiff's purported "discharge," consider him an employee. That contract barred Amurcon from hiring or converting a PeopleReady associate to its own payroll until the associate had worked 520 hours. Dkt. 38-1 at 2.[5] Amurcon also agreed to pay a "conversion fee" if it "directly or indirectly hire[d] or cause[d] to be hired by any third party, any current Associate" during the agreement or within 120 days of the last date an associate worked at the posting. *Id*.  Nevertheless, the *Butler* decision cautioned that "the subjective intentions of the parties ordinarily will be of *minimal consequence* in the joint employment analysis." 793 F.3d at 414 n.12 (emphasis added). The Fourth Circuit made the following observation:

> For example, the fact that an employee signs a form disclaiming an employment relationship will not defeat a finding of joint employment. Similarly, an individual's failure to appreciate an entity as an employer should not be dispositive. Instead, the intent of the parties should be part of the overall fact-specific inquiry into the putative employee's circumstances.

---

[5] A document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d. 700, 705 (4th Cir. 2007)). Although the Amurcon Defendants attached the contract between Amurcon and PeopleReady to their motion to dismiss, the Plaintiff referred to it in his FAC to support his proposition that he was "applying for a position [at Amurcon] once he has worked five hundred and twenty hours according to their contract." FAC at ¶ 79. The Court may consider a document attached to a motion to dismiss when, as here, a complaint explicitly refers to the document, it is integral to assertions made in a complaint, and the plaintiff does not challenge its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004).

*Id*. Here, it is noteworthy that the contract Amurcon relies on between itself and PeopleReady to disclaim any employment relationship with the Plaintiff did not include him as a party. Thus, he did not expressly assent to its terms. Additionally, as noted above, the Plaintiff's statements could also be construed as him expressing a desire to become a regular employee of Amurcon instead of a temporary employee. Considering these circumstances, the Court does not find that the ninth Butler factor decisively undercuts a joint employment relationship.

As for factors six (formal or informal training), seven (whether duties are similar to those of regular employees), and eight (whether the Plaintiff was solely assigned to the putative employer), the FAC has no substantive allegations to assess.

"[M]indful that control remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers," *Butler*, 793 F.3d at 415, the Court finds that the Plaintiff included enough facts in the FAC to plausibly allege that Amurcon was his joint employer. A reasonable reading of his factual allegations is that Amurcon exercised enough control and supervision over his day-to-day work at the Wesley Apartments that the company can be considered a joint employer under *Butler*. Amurcon's strongest arguments ultimately related to the parties' subjective intentions, but those are only one aspect of the "overall fact-specific inquiry into the putative employee's circumstances." *Id*. at 414 n.12. Accordingly, the Plaintiff has made out a plausible allegation that Amurcon was his "joint employer" for purposes of Title VII and ADA liability.

## E. The Plaintiff cannot bring Title VII and ADA claims against individual defendants

The statutory language in Title VII and ADA authorizes causes of action against *employers*. It is well-established in case law that these statutes do not allow for claims against

17

defendants in their individual capacities. *See Jones v. Sternheimer*, 387 Fed. Appx. 366, 368 (4th Cir. 2010) (unpublished) (finding that Title VII and the ADA "do not provide for causes of action against defendants in their individual capacities."); *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 472 (4th Cir. 1999) (explaining that Title VII and the ADA do not authorize actions against individuals defendants); *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 180–81 (4th Cir. 1998) (concluding that supervisors are not liable in their individual capacities for Title VII violations and do not fall within the statutory definition of "employer"). While it is unclear which defendants each count of the FAC is directed at, the Plaintiff's Title VII and ADA claims fail as a matter of law to the extent that they are brought against the four individual defendants. Thus, Counts I, II, VI, and VII are dismissed as to Barnes, Cannady, Vantassell, and Wommack.

**F. The Plaintiff fails to state a claim upon which relief can be granted for all counts asserted in his First Amended Complaint**

Based on the analysis above, all the claims against the PeopleReady Defendants are time-barred. With one exception – the claim for an "unenforceable" arbitration agreement (Count 10) – the Court does not assess the claims against the PeopleReady Defendants.  Additionally, the Title VII and Section 1981 claims against individual defendants are not allowed under the statutes. At this point in the analysis, the only claims still standing are those regarding the Amurcon Defendants. That is, Counts 1-2 and 6-7 (Title VII and ADA claims) against Amurcon and Counts 3-5 and 8-9 (Section 1981 claims) against all Amurcon Defendants. The Court separately addresses the arbitration agreement claim, which only appears to be against the PeopleReady Defendants.

18

*1. Race and national origin discrimination under Title VII and race discrimination under Section 1981 (Counts 1 and 3)*

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, … or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 requires that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). *See also Aleman v. Chugach Support Services, Inc*., 485 F.2d 206, 208 (4th Cir. 2007) (noting that Section 1981 "prohibits racial discrimination in the making and enforcement of contracts"). The elements of a prima facia case are the same for Title VII and Section 1981 claims. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *see also Sanders v. Tikras Technology Solutions Corp*., 725 Fed. Appx. 228, 229-30 (4th Cir. 2018) (unpublished). That is, absent direct evidence of discrimination, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, the Plaintiff has sufficiently plead the first three elements with respect to Amurcon.

He is a Latino man of Puerto Rican descent. He clearly falls into a protected class under the statute.

For the purposes of stating a claim for relief, the Plaintiff sufficiently alleges facts that would support him having a satisfactory job performance. To be sure, he makes conclusory statements throughout the FAC, such as that he was "performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations." FAC at ¶ 102.

However, he also makes relevant factual allegations. He alleges that at various points during his work with Amurcon he received text alerts stating that he "received a great rating" for his "excellent work." *See id.* at ¶¶ 36, 52. He also alleges that he was informed by Vantassell, at PeopleReady, that these ratings were issued by "Ms. Rebecca" (who the Court assumes to be Cannady) at Amurcon. *Id.* at ¶ 61. These allegations, taken together, are sufficient to meet the "satisfactory job performance" element of the Plaintiff's claim because they essentially allege that Amurcon personnel provided him positive feedback on his work performance.

Finally, the Amurcon Defendants argue that the termination of the Plaintiff's temporary posting at Amurcon was not an "adverse employment action" because he was still employed at PeopleReady after he was removed from Amurcon. Dkt. 38 at 10. They contend he has not sufficiently shown that he was "worse off" and cite to *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 977 (2024). *Muldrow* clarified that to bring a Title VII claim, a party who is injured by an allegedly discriminatory "transfer" needs to allege he suffered "some injury" regarding their employment terms or conditions such that the transfer left him "worse off" (though not necessarily "significantly" worse off). *Id.* Here, the Plaintiff contends that he was, in effect, the victim of a discriminatory *discharge* (as opposed to a transfer). *See, e.g.*, FAC at ¶¶ 101-03, 126-28. But even if his adverse employment action were construed as a transfer, he still alleges that he was worse off under *Muldrow*. Though the "Count I" section of his FAC does not expressly detail his purported injury, other allegations in the complaint explain how the loss of this job assignment harmed him. He explains, for example, that the job was conveniently located close to his home and was a part-time job opportunity that worked well for him since he was on early retirement due to his spinal fusion surgery. FAC at ¶ 63. These aspects of his job, paired with the alleged infrequent availability of *part-time* work opportunities that PeopleReady offered, Dkt.

20

26, suggests that the loss of this posting amounted to a negative change in his employment terms or conditions. Though this harm was, admittedly, not "significant," *Muldrow* only requires he be "worse off."

Nevertheless, the Plaintiff fails to meet the fourth element because the FAC lacks factual allegations that, taken as true, would establish that Amurcon treated him different than similarly situated employees outside his protected class. He alleges that he was replaced soon after his "discharge" with Steve Glass, a similarly qualified Caucasian male temporary worker who had a construction background. FAC at ¶¶ 80, 103-104. The Plaintiff, however, alleges that the *employment agency* - not Amurcon – was responsible for selecting his replacement. *Id*. at ¶ 104. There are no facts that allege Amurcon played any role in choosing a new temporary worker outside of his protected class.

The Plaintiff also alleges that "no other white employee … had been discharge[d] in the manner that [he] was discharged." *Id*. at ¶ 99. "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, '[t]he similarity between comparators ... must be clearly established in order to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (unpublished) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). The relevant inquiry is "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Id.* (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)). Here, the Plaintiff's allegations are wholly insufficient and lacking in any factual detail to permit a meaningful comparison between the Plaintiff and any white employee of Amurcon to raise an inference of

discrimination on account of differing treatment. Indeed, many of the Plaintiff's allegations summarily assert that defendants terminated him "for a discriminatory reason," FAC at ¶ 101, without any further factual enhancement.

"[T]o survive a motion to dismiss, the complaint must set forth specific facts giving rise to an inference of discrimination; conclusory allegations of discrimination are insufficient." *See, e.g., Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 782 (D. Md. 2010) (citing *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990)); *see also Simpson*, 900 F.2d at 35 ("Appellant's conclusory allegations of discrimination and harassment do not state a claim upon which relief can be granted."); *Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true are inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"); *id.* at 678 ("naked assertion[s] devoid of further factual enhancement" will not suffice to state a claim). Here, the Plaintiff has failed to state a claim against Amurcon for discrimination under either Title VII or Section 1981.

As for the individual Amurcon defendants, Barnes and Cannady, the Fourth Circuit has stated that "'to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action,' and the claim "must be predicated on the actor's personal involvement.'" *Hawthorne v. Virginia State University*, 568 Fed. Appx. 204-05 (4th Cir. 2014) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000)). Courts often examine "whether the individual defendant had the capacity to terminate the plaintiff's employment" and "whether plaintiff plausibly alleges direct evidence of the defendant's racially discriminatory animus and shows that the individual defendant took part in the adverse employment action." *Benjamin v. Sparks*, 173 F.Supp.3d 272, 283 (E.D.N.C. 2016) (citations omitted).

Here, the Plaintiff alleged no non-conclusory facts that suggest Barnes was involved in his termination. All that the FAC substantively alleges about Barnes is that he informed the Plaintiff of the job's responsibilities and schedule, FAC at ¶¶ 37-43, and that Barnes offered the Plaintiff the ability to rest breaks in the office due to the Plaintiff's back issues. *Id*. at ¶¶ 43-44. This is not enough to plausibly allege a Section 1981 claim against Barnes.

The Plaintiff does allege that Cannady was at least somewhat involved in the termination. He alleges that he was told by Vantassell, at PeopleReady, that Cannady called PeopleReady to inform the agency that it was not taking on temp employees for budgetary reasons. *Id*. at ¶ 56. Later, Vantassell allegedly informed the Plaintiff that she was not truthful with him about why Amurcon removed him from the posting. *Id*. at ¶ 72. Instead, Vantassell said "the reason they gave me was that you were doing too much talking and not enough work." *Id*. at ¶ 73. The Plaintiff, however, makes no specific allegation related to Cannady's authority to fire or hire temporary employees. There are also no allegations about how she authorized or directed discriminatory acts. Without more detail about Cannady's alleged role in his termination, the Plaintiff fails to state a Section 1981 claim against her.

In sum, the Plaintiff's Title VII claim for race and national origin discrimination (Count 1) and Section 1981 race discrimination claim (Count 3) must be dismissed.

### 2. Title VII and Section 1981 retaliation claims (Counts 2 and 4)

The Plaintiff alleges claims for "Race & National Origin Retaliation in Violation of Title VII," FAC at ¶¶ 101-119, and "Race Retaliation in Violation of § 1981." *Id*. at ¶¶ 136-56. To bring a retaliation claim under either statute, a plaintiff must show "(1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against

[him], and (3) that there was a causal link between the two events." *Boyer–Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 281 (4th Cir. 2015) (en banc)); *see also id.* (explaining that "[a] prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements.").

The Amurcon Defendants argue that the Plaintiff has not alleged that he engaged in "protected activity" covered by either statute. Dkt. 38 at 11-12. In the context of Title VII, the statute prohibits employers from discriminating "against any … employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Unlawful employment practices include refusing to hire, discharging, or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Section 1981 is more narrowly focused on racial discrimination. *See* 42 U.S.C. § 1981(a) ("All persons … shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens") (emphasis added). Thus, as another court in this circuit has noted, "[p]rotected activity under § 1981 includes opposing 'policies or practices that discriminated against any person on the basis of race.' " *Cepada v. Board of Educ. of Baltimore County*, 974 F.Supp.2d 772, 788 (D. Md. 2013) (citations omitted).

Here, the Plaintiff repeatedly contends that his protected activity was complaining about his lower back being aggravated. FAC at ¶¶ 107, 111, 142, 145. He alleges that this led to his termination. *Id*. The Court understands this kind of conduct to be related to disability. However,

24

the Plaintiff alleges no facts showing that he engaged in activity opposed to employment

practices that run afoul of Title VII (discrimination based on race, color, religion, sex, or national

origin) or Section 1981 (race-based discrimination). He also does not assert that he was retaliated

against for activity like "participating in an ongoing investigation or proceeding under Title VII."

*Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 259 (4th Cir. 1998). His

purported "protected activity" is simply not covered by these statutes. Accordingly, both

retaliation claims must be dismissed as to Amurcon.

As for the individual Amurcon employees, the Plaintiff fails to state a Section 1981

retaliation claim. "Supervisors may be individually liable where: (1) the supervisor 'authorize[s],

direct[s], or participate[s] in a discriminatory act'; (2) the supervisor's act or omission which

resulted in the infringement of rights was intentional, and plaintiff makes an affirmative showing

of that fact; and (3) the plaintiff establishes the elements of a prima facie case for retaliation."

*Blaise v. Harris*, No. 3:16CV0023, 2016 WL 4265748, at *6 (E.D. Va. Aug. 11, 2016) (citing

*Tibbs v. Baltimore City Police Dep't*, No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *6 (D.

Md. Aug. 23, 2012)). The Plaintiff failed to state a retaliation claim against Amurcon because he

did not allege any "protected activity" covered by the statute. Accordingly, his individual claims

against Barnes and Cannady must also be dismissed.


### 3. *Disability Discrimination in Violation of Section 1981(a)(2) (Count 5)*

The Plaintiff next contends that he was the victim of "intentional disability

discrimination" because he was "unfairly discharged in retaliation from his assignment as a part

time maintenance worker ... for his complaints about aggravating his lower back while at work,

an event that highlighted his protected disability." FAC at ¶ 164. He asserts this claim under 42

U.S.C. § 1981. *Id.* at ¶¶ 170-71.

As noted above, this statute addresses racial discrimination. It specifically provides as

follows:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

42 U.S.C. § 1981(a). This statute does not create a cause of action for disability-based

discrimination. *See Clement v. Satterfield*, 927 F.Supp.2d 297, 307 (W.D. Va. 2013) (noting that

"§1981 does not prohibit discrimination on the basis of disability"); *Blaise v. Harris,* No.

3:16CV0023, 2016 WL 4265748, at *5 n.4 (E.D. Va. Aug. 11, 2016) (noting that to the extent

that a pro se plaintiff alleged disability-based discrimination, "Section 1981 does not present an

alternate cause of action for this claim because that provision only guarantees racial non-

discrimination."). Accordingly, Count 5 must be dismissed because it alleges discrimination on

the basis of disability - a cause of action that does not exist in Section 1981.


### 4. Claim for Disability Discrimination in Violation of ADA (Count 6)

The Plaintiff contends he was the victim of disability-based discrimination when he was

removed from his work at Amurcon. FAC at ¶¶ 173-92.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on

the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment."  42 U.S.C. § 12112(a). To state an ADA discrimination claim, a

plaintiff needs to show (1) he "was a qualified individual with a disability;" (2) he suffered an

adverse employment action; (3) he "was fulfilling h[is] employer's legitimate expectations" at

the time of the adverse action; and (4) the circumstances of the adverse action "raise a reasonable

inference of unlawful discrimination based on plaintiff's disability." *Reynolds v. American Nat.*

*Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).

Here, the Amurcon Defendants expressly contest the second and fourth elements. Dkt. 38

at 13-14. The Court finds that because the Plaintiff sufficiently alleged that Amurcon was his

joint employer, his removal from his job at Amurcon — whether construed as a discharge or a

transfer — would qualify as an adverse employment action. Nevertheless, the Court agrees with

the Amurcon Defendants that the facts alleged in the FAC simply do not "raise a reasonable

inference" of unlawful discrimination based on the Plaintiff's purported back-related disability.

He alleges that after he was removed from the Amurcon job, he was "immediately replaced" by

another worker "with a disability." FAC at ¶ 183. This undercuts the potential inference that his

status as an individual with a disability was the reason for his removal. That said, the Plaintiff

alleges that the *employment agency* selected the individual who replaced the Plaintiff, *id.*, so the

identity of the individual who took the Plaintiff's role may only support a limited inference

regarding why *Amurcon* removed him. More significantly, the Plaintiff alleges that Barnes, who

he describes as a "maintenance assistant with supervisory authority" at Amurcon, *id*. at ¶ 44,

offered him an accommodation when the Plaintiff informed Barnes of his April 2021 back

surgery and 35-pound lifting limit. *Id*. at ¶¶ 43-44. The Plaintiff does not allege that he formally

requested an accommodation; instead, it appears that Barnes *proactively offered* the Plaintiff an

accommodation for the Plaintiff to sit in the office and rest his back when needed. *Id*. These

factual allegations suggest that the Plaintiff's colleagues were not hostile to his disability and, at least when he began his work at Amurcon, sought to reasonably accommodate him. Although the Plaintiff asserts that he engaged in "protected activity" by complaining about aggravating his lower back while working at Amurcon, *id*. at ¶ 184, there are no other non-conclusory, factual allegations that would support a reasonable inference that he was discriminated against based on his disability.

As the Fourth Circuit has explained, "[t]he mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024) (citing *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). If a court "would have to 'speculate' to 'fill in the gaps' regarding the defendant's motive, the circumstances do not warrant a reasonable inference of discrimination." *Id*. The Plaintiff's minimal factual allegations regarding disability-based discrimination simply invites too much speculation from the Court. He does not plausibly allege a connection between his disability and an adverse employment action. Accordingly, Count 6 will be dismissed.

### 5. Claim for Disability Retaliation in Violation of ADA (Count 7)

Under the ADA, "[n]o personal shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To bring a retaliation claim, a plaintiff must show "(1) he engaged in protected conduct, (2) he suffered an adverse action, and

(3) a causal link exists between the protected conduct and the adverse action." *Reynolds*, 701 F.3d at 154.

The Court finds that the Plaintiff sufficiently alleges an adverse employment action because he alleges he was discharged from his work at Amurcon. *See, e.g.*, FAC at ¶ 199.

However, the Plaintiff does not sufficiently allege that he engaged in "protected activity" under the ADA. To be sure, requesting an accommodation is a protected activity. *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 577 (4th Cir. 2015). It is unclear from the alleged facts whether the Plaintiff even requested accommodations when he informed Barnes of his 35-pound lifting limit and later told Barnes that he aggravated his back at work. FAC at ¶¶ 44, 48-50, 184. "Before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice" of his disability. *Lashley v. Spartanburg Methodist College*, 66 4th 168, 179 (4th Cir. 2023) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013). An employee does not need to use the exact phrase "reasonable accommodation" in his request – there just needs to be a "logical bridge connecting the employee's disability to the workplace changes he requests." *Kelly*, 90 4th 158 at 168. Still, "generalized health complaints, as opposed to a more formal request for an ADA accommodation, <u>do not rise to the level of ADA-protected activity</u>." *Lashley*, 66 F.4th at 180 n.2 (emphasis added). Based on the facts in the FAC, it does not appear that the Plaintiff made a "request" of Amurcon; indeed, his complaints are more akin to "generalized health complaints" than more formal accommodation requests. Accordingly, he has not sufficiently alleged that he engaged in protected activity.

Amurcon's motion focuses on the third element of causation to argue that no causal link exists between protected conduct and an adverse employment action. Dkt. 38 at 15. The Court agrees. Here, the Plaintiff alleges few non-conclusory facts from which a "causal link" can be inferred. To be sure, the Plaintiff alleges a close temporal relationship between the purported protected conduct and his discharge. FAC at ¶ 199. But "temporal proximity *alone* is not sufficient to establish that [his] engagement in protected activity was a 'but for' cause" of the adverse action. *Staley* v. *Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014); *see also Dimaano v. Va. Center for Behavioral Rehabilitation*, No. 3:23-cv-312, 2024 WL 3823795, at *15 (E.D. Va. Aug. 13, 2024). Undoubtedly, close temporal proximity like that the Plaintiff alleges here could be suspicious, but the FAC is devoid of any additional facts that would plausibly allege a causal relationship between what he alleges was his protected activity and his termination. Accordingly, the Plaintiff has not met his initial burden for pleading an ADA retaliation claim against Amurcon. Count 7 will be dismissed.

### 6. "Claim for Reta[l]iation in Connection with At-Will Employment Contractual Relationship in Violation of 'Make and [E]nforce' § 1981(b)" (Count 8)

The Plaintiff asserts what appears to be a second retaliation claim under 42 U.S.C. § 1981. He seems to allege this as a cause of action under 42 U.S.C. § 1981(b) as opposed to 42 U.S.C. § 1981(a). However, subsection (b) merely defines what the term "make and enforce contracts" means in the earlier provision, 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to *make and enforce contracts* … as is enjoyed by white citizens.") It does not create an entirely distinct cause of action. When read as a whole, the statute "protects all persons from racial discrimination

in making and enforcing contracts." *Woods v. City of Greensboro*, 855 F.3d 639, 645 (4th Cir. 2017). Thus, the analysis for the earlier Section 1981 retaliation claim, controls here as well. As with Count 4, the Plaintiff contends he was retaliated against for the "protected activity of complaining to Joint Employer Defendant (customer) [Amurcon] of aggravating his lower back while at work." FAC at ¶ 216. But such conduct is unrelated to the kind the kind of discrimination – race-based discrimination – barred by 42 U.S.C. § 1981. Accordingly, Count 8 must be dismissed.

### 7. *"Claim for Individual Defendant Liability Retaliation in Violation of § 1981" (Count 9)*

In Count 9, the Plaintiff alleges that the individual defendants – Michael Barnes, Rebecca Cannady, Jody Vantassell, and Melissa Wommack – all engaged in retaliation in violation of Section 1981.

As explained earlier, the Plaintiff's claims against PeopleReady's employees – Vantassell and Wommack – are barred by the limitations period in his Employment Agreement with PeopleReady.

Nevertheless, the Plaintiff has not alleged a Section 1981 retaliation claim against *any* of these defendants. To bring an individual retaliation claim under this statute, a plaintiff must show "(1) the supervisor 'authorize[s], direct[s], or participate[s] in a discriminatory act'; (2) the supervisor's act or omission which resulted in the infringement of rights was intentional, and plaintiff makes an affirmative showing of that fact; and (3) the plaintiff establishes the elements of a prima facie case for retaliation." *Blaise*, 2016 WL 4265748 at *6. The elements of a prima facie retaliation cause, in turn, are that (1) the plaintiff engaged in a protected activity, (2) his

employer took an adverse employment action against him, and (3) that there was a causal link between the two events." *Boyer–Liberto,* 786 F.3d at 281.

This particular count of the complaint is filled with conclusory allegations against the individual defendants. The Plaintiff alleges virtually no facts that map onto the elements of a retaliation claim. Critically, he alleges no "protected activity" within the meaning of Section 1981. *See Cepada,* 974 F.Supp.2d at 788 (explaining that "[p]rotected activity under § 1981 includes opposing 'policies or practices that discriminated against any person on the basis of race.'"). The only protected activity he seems to allege is that he complained about aggravating his lower back while working at Amurcon. FAC at ¶ 229. This purported protected activity is consistent with other allegations he makes across the complaint. *See id*. at ¶¶ 65 (reporting that he told Vantassell, at PeopleReady, that his termination was in retaliation because he had complained about aggravating his lower back") , 216 (different Section 1981 retaliation claim that describes his "protected activity" as complaining to Amurcon about aggravating his back). Simply put, the Plaintiff's contention that he was fired for engaging in protected activity that only related to his disability does not support a retaliation claim under Section 1981. Accordingly, Count 9 will be dismissed as to the individual defendants.

### 8. *"Claim for Unenforceable, Arbitration Agreement" (Count 10)*

The Plaintiff alleges that his "arbitration agreement" with PeopleReady should be found "unenforceable and unconscionable in its entirety" because it was formed in a "procedurally unconscionable manner."  FAC at ¶¶ 262-63.[6]

---

[6] Although the Amurcon Defendants' addressed Count 10 in their motion, Dkt. 38 at 17-18, the allegations relate to PeopleReady and TrueBlue. Accordingly, Amurcon and its employees are not defendants to Count 10.

Based on the FAC and the PeopleReady Defendants' response, the Court understands the "arbitration agreement" to be part of the Employment Agreement discussed earlier. It includes an arbitration agreement and an opt-out clause, allowing the employee to opt out of the arbitration agreement within 30 days of the document's execution. Dkt. 28-2 at 1-2.

The Plaintiff's primary argument relates to PeopleReady's alleged failure to provide him with a paper copy of the Employment Agreement. He alleges that at the time he completed the new hire paperwork on December 2, 2022, it was too lengthy for him "to remember and understand." FAC at ¶ 27. However, he noticed that it contained the 30-day opt out provision. *Id*. at ¶ 28. Thus, "read and electronically signed the new hire paper work with a reasonable Expectation of receiving a printed copy of the paper work from PeopleReady office personnel so that he [could] have the opportunity to carefully review/understand the terms of the agreement and make a decision within the (30) thirty day opt-out deadline." *Id*. at ¶ 29. PeopleReady staff did not provide him with requested copies. *Id*. at ¶ 30. Even so, PeopleReady emailed him digital copies of the new hire paper work "that included among other things, the Employee Handbook, and the Arbitration Agreement" on December 13, 2022. *Id*. at ¶ 265. The Plaintiff alleges he did not notice the email until "[s]ometime after February 10, 2023," which was after the January 2, 2023 opt-out deadline. *Id*.

Even though the Plaintiff concedes that he received an emailed copy of the new hire paperwork, including the Employment Agreement, *id*. at ¶ 265, he takes the position that PeopleReady's failure to give him a paper copy of the agreement means he had "no meaningful choice and no opportunity to carefully read, research, and understand the terms of the agreement." *Id*. at ¶ 260. He further claims that his "lack of memory," and "lack of understanding

of the arbitration agreement provisions" put him at a "great disadvantage," giving him "little or no bargaining power." *Id.*

Under Virginia law, an unconscionable agreement is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Chaplain v. Chaplain,* 682 S.E.2d 108, 113 (Va. App. 2009). Unconscionability has a procedural and substantive requirement. Procedural unconscionability reflects "inequity and bad faith in 'the accompanying incidents ..., such as concealments, misrepresentations, undue advantage, oppressions on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like.'" *Lee v. Fairfax County School Board*, 621 Fed. Appx. 761, 763 (4th Cir. 2005) (quoting *Chaplain*, 682 S.E.2d at 114). "When conducting the procedural unconscionability analysis, Virginia courts deal 'primarily with a grossly unequal bargaining power at the time the contract is formed.'" *Johnson v. Opportunity Financial, LLC*, 2023 WL 2636712, at *9 (E.D. Va. March 24, 2023) (quoting *Envirotech Corp. v. Halco Eng'g, Inc.*, 364 S.E.2d 215, 220 (Va. 1988)). Substantive unconscionability requires "gross disparity in the value exchanged," *id.* (quoting *Chaplain*, 682 S.E.2d at 113) or for the inequality to be "so gross as to shock the conscious." *Johnson*, 2023 WL 2636712, at *9 (quoting *Smyth-Bros.-McCleary-McClellan Co. v. Beresford*, 104 S.E. 371, 382 (Va. 1920)).

Despite the Plaintiff's allegation that PeopleReady's failure to provide him with a paper copy of the Employment Agreement was "procedurally unconscionable," his claim about the unfairness of this situation is undercut by his own admission that he received digital copies of the onboarding documents, including the agreement, via email on December 13, 2022. FAC at ¶ 265. This was well within the 30-day opt-out period that he wished to use to review the arbitration

34

provisions. *Id*. at ¶¶ 260, 265.  He also admits that he "read and electronically signed" the new-hire documents. *Id*. at ¶ 29. The circumstances here - that he signed a contract, later wanted to review it, and overlooked the digital copy that the company emailed him – simply do not reflect inequity or bad faith in the contracting process.[7] Finally, the Plaintiff makes no allegations about the content or terms of the agreement. Thus, he has not alleged the substantive requirement for unconscionability.

In sum, the Plaintiff has not sufficiently alleged that the agreement he signed with PeopleReady on December 2, 2022 is unconscionable. The Court declines his invitation to declare it unenforceable. Thus, the PeopleReady Defendant's motion to dismiss is granted as to Count 10.

***

The Plaintiff's First Amended Complaint alleges a multitude of legal issues arising from his brief period as a temporary worker at an apartment complex. However, many of his counts misinterpret the law or lack the factual allegations required to state a claim for relief. Even when the Court liberally construes his FAC, none of his claims survive the Defendants' motions to dismiss. To be sure, to properly bring a claim under Fed. R. Civ. P. 8, the Plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  But a pleading that merely offers "labels and conclusions," "a formulaic recitation of the

---

[7] The Plaintiff refer to the agreement as a "contract of adhesion" and "one-sided" but does not elaborate. FAC at ¶ 262. To the extent that this was a contract of adhesion, that "may suggest that a degree of procedural unfairness exists." *Green v. Kline Chevrolet Sales Corp*., No. 2:19cvl27, 2019 WL 3728266, at *6 (E.D. Va. Aug. 7, 2019). "However, contracts of adhesion are not per se unconscionable merely because the first element of procedural unconscionability exists; courts also must look to the substance of the agreement." *Id.*; *see also PHC-Martinsville, Inc. v. Dennis*, 2017 WL 4053898, at *2 n. 4 (Va. Sept. 14, 2017) (unpublished) ("While a court may take into consideration that a contract is one of adhesion in determining whether a contractual provision is unconscionable, such contracts are not unconscionable per se.") Because the Plaintiff makes no arguments about any substantive unconscionability of the Employment Agreement or the arbitration provisions contained therein, the Court goes no further in considering this aspect of the Plaintiff's "claim for unenforceable, arbitration agreement."

elements of a cause of action," or "'naked assertion[s]' devoid of further factual enhancement"
will not do. *Iqbal*, 556 U.S. at 678.

For the reasons provided above, the PeopleReady Defendants' motion to dismiss, Dkt. 28,
is **GRANTED** as to all counts. This is because the Plaintiff failed to bring claims arising from
his employment with PeopleReady and TrueBlue within the Employment Contract's limitations
period. Thus, the claims asserted in Counts 1 through 9 are time-barred. Moreover, Count 10 is
dismissed because the Plaintiff failed to state a claim that the Employment Agreement is
unconscionable.

Additionally, the Amurcon Defendants' motion to dismiss, Dkt. 38, is **GRANTED** as to
Counts 1 through 9 for failing to state a claim upon which relief can be granted.

## II. PLAINTIFF'S MOTION TO AMEND COMPLAINT

The Plaintiff moves for leave to file a Second Amended Complaint ("SAC"). Dkts. 32,
41.[8] Because his proposed complaint contains a nearly identical set of factual allegations as the
FAC, there is no need to recite its general factual allegations section. Instead, the Court notes that
there are a few major substantive changes in the SAC. First, the Plaintiff adds a new count for
failure to retaliate under the ADA (Count 5).[9] Second, he modifies his claim for an
"unenforceable arbitration agreement" to include an argument that the PeopleReady Defendants
"waived" their right to arbitrate. Finally, he removes his claim for retaliation under Section
1981(a)(2), which was Count 5 in the FAC.

---

[8] The proposed Second Amended Complaint is at Dkt. 41.
[9] The Plaintiff mistakenly labels this as "Count VI" but since it is the fifth count listed in the FAC the Court refers to
it as Count 5.

In sum, the SAC alleges the following claims:[10]

- Count 1: Claim for Race and National Origin Discrimination in Violation of Title VII

- Count 2: Claim for Race and National Origin Retaliation in Violation of Title VII

- Count 3: Claim for Race Discrimination in Violation of §1981

- Count 4: Claim for Retaliation in Violation of §1981

- Count 5: Claim for Failure to Accommodate in Violation of the ADA

- Count 6: Claim for Retaliation in Violation of ADA

- Count 7: Claim for Wrongful Discharge in Violation of ADA

- Count 8: Claim for Race and Retaliation in Violation of "Make and Enforce" Provision in § 1981(b)

- Count 9: Claim for Individual Liability Retaliation in Violation of § 1981

- Count 10: Claim for Unenforceable Arbitration Agreement, Waiver of Right to Arbitrate by Conduct, Default, and Time-Barred

The Court analyzes each count below. Where the factual allegations or defendants' arguments are consistent with those made with respect to the FAC, the Court relies on its earlier analysis. However, substantive changes in the SAC are more fully addressed.


**A. Legal Standards**

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a highly permissive standard. *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Leave to amend

---

[10] The counts are numbered in the order they appear in the SAC.

"'should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted). Amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). For example, the court may "disallow[ ] an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss." *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–21 (4th Cir. 1990); *see also Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (explaining that "[a] proposed amendment is futile when it is clearly insufficient or frivolous on its face," or "if the claim it presents would not survive a motion to dismiss.") (internal quotation marks and citations omitted).

As noted more fully above, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (2007), accepting all well pleaded factual allegations in the complaint as true and taking all reasonable inference in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Mere formulaic recitations of the elements of a cause of action and conclusory assertions devoid of factual enhancement are insufficient to state a claim under Fed. R. Civ. P. 8(a)(2). *Iqbal*, 556 U.S. at 678. Courts must construe the filings of *pro se* litigants liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1970).

The Amurcon Defendants and PeopleReady Defendants both oppose the Plaintiff's request to file his SAC because his proposed amendments would be futile because the SAC fails to state a claim upon which relief can be granted. Dkts. 43, 44.

**B. Preliminary matters**

At the outset, the Court reiterates its earlier finding, that the limitations period in the Plaintiff's Employment Agreement bars the Plaintiff's Title VII, ADA, and Section 1981 claims against the PeopleReady Defendants. That agreement created a one-year limitations period to file an employment-related claim. Dkt. 28-1. The Plaintiff did not bring his claims in this Court until over a year after the date of his alleged removal from the Amurcon job posting on January 27, 2023. SAC at ¶ 65. Accordingly, his amended claims against the PeopleReady Defendants would be futile. The only proposed claim against the PeopleReady analyzed below is Count 10, regarding the validity of the Employment Agreement.

Additionally, to the extent that the Plaintiff intends to bring ADA or Title VII claims against the individual defendants, these statutes do not allow for claims against defendants in their individual capacities. *See, e.g., Jones*, 387 Fed. Appx. at 368. Thus, the SAC – which does not clearly identify the defendants of each count – cannot be amended to allow for ADA and Title VII claims against Barnes, Cannady, Vantassell, or Wommack.

Finally, Amurcon argues in its opposition to the Plaintiff's request for leave to file his SAC that he fails to allege facts that would show Amurcon was the Plaintiff's joint employer. Dkt. 44 at 5-7. The Court agrees with Amurcon insofar as it contends that the Plaintiff relies on inapplicable case law in the SAC's discussion of a joint employer relationship. SAC at ¶¶ 58-62. In *Butler v. Drive Automotive Industries of America, Inc*., 793 F.3d 404, 414 (4th Cir. 2015), the Fourth Circuit articulated a nine-part test for assessing a potential joint-employer relationship. That is the precedent this Court must apply. However, even though the Plaintiff cited the wrong

case law,[11] that does not change the Court's conclusion, that the facts in the SAC are consistent

enough with those in the FAC for the Plaintiff to have plausibly alleged that Amurcon exercised

control over his work to be considered a joint employer.

## C. Analysis of proposed SAC claims

### 1. Race and national origin discrimination under Title VII and race discrimination under Section 1981 (Counts 1 and 3)

As explained earlier, the elements of a prima facia case are the same for Title VII and

Section 1981 claims. Absent direct evidence of discrimination, a plaintiff must show "(1)

membership in a protected class; (2) satisfactory job performance; (3) adverse employment

action; and (4) different treatment from similarly situated employees outside the protected class."

*Coleman*, 626 F.3d at 190.

As he did in the FAC, the Plaintiff alleges enough facts in the SAC regarding the first

three elements. He is in a protected class, SAC at ¶¶ 96, 140. His allegations of receiving notices

of his "great work" ratings on his phone that came from Amurcon's management, *id*. at ¶¶ 50, 61

(at 14)[12], 66 (at 12), is sufficient to allege satisfactory job performance. His removal from

Amurcon is also sufficient to allege an adverse employment action. Nevertheless, the Plaintiff

alleges no new facts that show the fourth element, "different treatment from similarly situated

employees outside the protected class."

Just like in the FAC, the SAC only alleges that PeopleReady replaced him with a

"Caucasian male temporary worker." *Id*. at ¶ 102. There are no factual allegations that *Amurcon*

---

[11] For example, the Plaintiff relies on an inapplicable 1984 case from the Southern District of New York. *Amarnare v. Merrill Lynch*, 611 F.Supp. 344 (S.D.N.Y. 1984).

[12] The Plaintiff erroneously formatted his paragraphs in certain parts of the complaint. Accordingly, the Court will occasionally refer to the page number of the document when it is unclear which paragraph citation is relevant.

played any role in selecting a new temporary worker. Moreover, he contends that "no other white employee … had been discharge[d] in the manner that [he] was discharged." *Id*. at ¶ 103. This does not allow for any meaningful comparison between the Plaintiff and any white employee of Amurcon to raise an inference of discrimination on account of differing treatment. *See Swaso*, 698 F. App'x at 748 ("Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, '[t]he similarity between comparators ... must be clearly established in order to be meaningful.'").

In his Section 1981 racial discrimination claim, the Plaintiff makes largely the same allegations as his Title VII discrimination claim. However, at one point he further undermines the plausibility of his Section 1981 claim because he alleges he "was discharged in retaliation *for his protected activity* for complaining about aggravating his lower back while at work." SAC at ¶ 142 (italics added). This suggests his discharge was *because of a purported disability*, not because of his race.

"Absent further factual development," the Plaintiff "falls short of alleging facts from which to reasonably infer that [his] difference in treatment" compared to other white Amurcon employees "was attributable to racial discrimination." *Swaso*, 698 Fed.Appx. at 749.

Accordingly, the Plaintiff's Title VII and Section 1981 claims against Amurcon would be futile.

To the extent that he seeks to bring his claim in Count 3 against individual Amurcon defendants, Barnes and Cannady, the Fourth Circuit has stated that "'to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action,' and the claim "must be predicated on the actor's personal involvement.'" *Hawthorne*, 568 Fed. Appx. at 204-05 (4th Cir. 2014). The facts

about the individual defendants in the SAC simply fail to plausibly allege such a link between these individuals and discriminatory action.

### 2. Title VII and Section 1981 Retaliation Claims (Counts 2, 4, and 9)

The Plaintiff's proposed amended retaliation claims fail to address the primary flaw identified in the analysis of the FAC: his failure to allege his participation in "protected activity" covered by either Title VII or Section 1981. To bring a retaliation claim under either statute, a plaintiff must show "(1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *Boyer–Liberto,* 786 F.3d at 281.

As discussed more fully above, these statutes do not cover "protected activity" related to alleged disability-based discrimination. In Counts 2, 4, and 9 of the SAC, the Plaintiff expressly identifies his "protected activity" as complaining about his lower back being aggravated. SAC at ¶¶ 118, 130, 162, 252, 258. Thus, he fails to allege facts that would satisfy the first prong required for a retaliation claim under either Title VII or Section 1981.

Similarly, his failure to allege relevant "protected activity" means that his Section 1981 retaliation claims in Counts 4 and 9 must be dismissed as to the individual Amurcon defendants. "Supervisors may be individually liable where: (1) the supervisor 'authorize[s], direct[s], or participate[s] in a discriminatory act'; (2) the supervisor's act or omission which resulted in the infringement of rights was intentional, and plaintiff makes an affirmative showing of that fact; and (3) the plaintiff establishes the elements of a prima facie case for retaliation." *Blaise,* 2016 WL 4265748, at *6. Here, the Plaintiff's proposed SAC does not allege facts that satisfy the third prong because, as this Court has noted repeatedly, the only "protected activity" he has alleged

arises from conduct related to his purported disability. *See, e.g*, SAC at ¶ 252. This is not covered by Section 1981.

In sum, the Plaintiff's proposed amendments for Counts 2 and 4 are futile because they would be subject to dismissal under Fed. R. C. P. 12(b)(6) for failure to state a claim.


### 3. Claim for Failure to Accommodate in Violation of the ADA (Count 5)

The Plaintiff alleges Amurcon violated the ADA by failing to accommodate his disability. SAC at ¶¶ 172-77. To bring a failure to accommodate claim, a plaintiff must show "(i) [he] was disabled, (ii) the employer had notice of [his] disability, (iii) [he] could perform the essential functions of her position with a reasonable accommodation, and (iv) the employer refused to make such accommodation." *Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 178 (4th Cir. 2023),

However, this claim would fail for the simple reason that it is at odds with the Plaintiff's own representations that Barnes – at Amurcon – "acted on his own accord to offered [sic] … an accommodation which [the Plaintiff] did not ask for." SAC at 76. In other words, the Plaintiff alleges that Amurcon personnel *offered an accommodation to him* for his 35-pound lifting limit and bending restrictions. *See id*. at ¶ 62 (at 11) ("Mr. Barnes offered [the Plaintiff] an accommodation which they both agreed upon, which was for him to sit in the office and rest his back if he needed to). This was an accommodation that the Plaintiff did not even request. Moreover, the Plaintiff alleges no facts that Amurcon refused to make an accommodation. Accordingly, he has not plausibly alleged a failure-to-accommodate claim under the ADA.


### 4. Claim for Retaliation in Violation of the ADA (Count 6)

The Plaintiff alleges no new facts in his amended ADA retaliation claim that are significantly different from those in his FAC version of this claim. To bring an ADA retaliation claim, a plaintiff must show "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds*, 701 F.3d at 154. Here, the Plaintiff's alleged discharge satisfies the second element, but he does not allege facts in the SAC to support the first and thirst elements.

In the SAC, the Plaintiff has not alleged facts that would plausibly establish that he engaged in "protected conduct," such as making a request for accommodations for a disability. Indeed, he now alleges that Barnes – at Amurcon – "acted on his own accord to offered [sic] … an accommodation which [the Plaintiff] *did not ask for*," after Plaintiff shared information about his lifting limit and bending restrictions. SAC at ¶ 76 (italics added). Moreover, his references to complaining about his back during his shifts at Amurcon amount to "generalized health complaints," which "do not rise to the level of ADA-protected activity." *Lashley*, 66 F.4th at 180 n.2.

The Plaintiff's SAC also provides few facts to establish a causal link between protected conduct and an adverse employment action. To be sure, the Plaintiff alleges a close temporal relationship between the purported protected conduct of complaining about his back and his discharge. SAC at ¶ 201. But "temporal proximity *alone* is not sufficient to establish that [his] engagement in protected activity was a 'but for' cause" of the adverse action. *Staley* v. *Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014). Accordingly, the Plaintiff's amended ADA retaliation claim would be futile because it does not allege facts that plausibly allege such a causal link exists.

*5. Claim for Wrongful Discharge in Violation of the ADA (Count 7)*

The limited facts underlying the Plaintiff's ADA discrimination claim in the SAC are substantially similar to those in his FAC. To state an ADA discrimination claim, a plaintiff needs to show (1) he "was a qualified individual with a disability;" (2) he suffered an adverse employment action; (3) he "was fulfilling h[is] employer's legitimate expectations" at the time of the adverse action; and (4) the circumstances of the adverse action "raise a reasonable inference of unlawful discrimination based on plaintiff's disability." *Reynolds*, 701 F.3d at 150. "The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Kelly* 90 F.4th at 169 (4th Cir. 2024).

The Plaintiff's proposed ADA wrongful discharge claim would fail to state a claim for relief. Even assuming the Plaintiff meets the first three prongs, he alleges no facts that raise a reasonable inference of disability-based discrimination. He asserts that Barnes "influenced the [Amurcon] Manager Ms. Cannady in her decision that directly lead [sic] to plaintiff being wrongfully discharge in retaliation" for complaining about his back, SAC at ¶¶ 218-19, but the SAC is devoid of any further factual enhancement. The Plaintiff merely makes several conclusory allegations. *See, e.g.*, *id*. at ¶¶ 217 ("Defendants violated federal law by permitting a work environment to exist that was discriminatory and retaliatory to Plaintiff, based upon Plaintiff's disability and protected activity."), 222 ("Defendant would not have terminated Plaintiff, or taken the other discriminatory actions against him, but for Plaintiff's disability and protected activity."). To meet the pleading standard of Rule 8, a complaint must offer more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 768 (citations

omitted). Accordingly, the Plaintiff's amended ADA discrimination claim would be futile
because it fails to state a claim.

### 6. Claim for "Race and [Retaliation]" in Violation of "Make and Enforce" Provision in § 1981(b) (Count 8)

The Plaintiff seems to construe 42 U.S.C. § 1981 as creating two separate causes of
actions. However, § 1981(b), by itself, does not create a cause of action. It merely defines the
term "make and enforce contracts" that appears in § 1981(a).

To the extent that Count 7 aims to assert a new cause of action than Counts 3, 4, and 9, it
is duplicative of those counts. Moreover, Count 7 alleges no facts that are different than Counts
3, 4, and 9. Because the Court has found each of those counts would be futile amendments, it
reaches the same conclusion for Count 7.

### 7. Claim for Unenforceable Arbitration Agreement and "Waiver of Right to Arbitrate by Conduct, Default, and Time Barred" (Count 10)

The Plaintiff's final proposed amendment is a revised version of Count 10, which
challenges the arbitration agreement between himself and the PeopleReady Defendants. The
Plaintiff refers to this contract as an "arbitration agreement" but the Court understands this to be
a reference to the "At-Will Employment & Dispute Resolution Agreement" ("Employment
Agreement") that contains arbitration-related provisions. Dkt. 28-2.

The Plaintiff significantly reworks this claim by removing his argument that the
Employment Agreement is unconscionable. Instead, he now argues that the Defendants' motions
to dismiss must be denied as moot "because defendants invoked their right to Compel Arbitration

and failed to perform their legal contractual obligation to file their motion [to] compel arbitration." SAC at ¶ 288. The Plaintiff's allegations are difficult to follow. From what the Court can discern, it appears that he had an exchange with one of the attorneys in this case in which the attorney stated that he or she may file a motion to compel arbitration. *Id*. at ¶¶ 282, 292. Even if that is true, no such motion has been filed in this case. The only pending motions are the Defendants' motions to dismiss the FAC, Dkts. 28, 37, and the Plaintiff's motion for leave to file his proposed SAC. The Court has no obligation to deny the Defendants' motions to dismiss just because none of them have filed a motion to compel arbitration. Accordingly, this proposed amended to the Plaintiff's complaint is futile.

***

Although leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2), the Court may deny leave when amendment would be futile. *Edwards* 178 F.3d at 242. "A proposed amendment is futile when it is clearly insufficient or frivolous on its face," or "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc*, 914 F.3d at 228. Here, if the Plaintiff were allowed to amend his complaint, all the counts asserted in his SAC would be subject to dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This is true, even when the Plaintiff's pro se status leads the Court to liberally construe his allegations. Accordingly, the Court will **DENY** the Plaintiff's motion for leave to file his second amended complaint. Dkt. 32.

### III. CONCLUSION

The Plaintiff's First Amended Complaint will be dismissed in its entirety because it fails to state a claim upon which relief can be granted. The Court will also deny the Plaintiff's request

for leave to file a Second Amended Complaint because the proposed amendments would be futile.

The Court understands that the Plaintiff has not had the benefit of a judicial opinion assessing the sufficiency of his pleadings. Accordingly, in resolving the Defendants' motions to dismiss, the Court will dismiss the Plaintiff's claims against the Amurcon Defendants ***without prejudice***. However, his claims against the PeopleReady Defendants are dismissed ***with prejudice*** because his claims are time-barred under the limitations period in the Employment Agreement. In other words, the Plaintiff may bring an amended complaint against the Amurcon Defendants, but he cannot continue to pursue his Section 1981, ADA, and Title VII claims against the PeopleReady Defendants (PeopleReady, Inc., TrueBlue, Inc., Jody Vantassell, and Melissa Wommack). The Plaintiff is reminded that claims against Michael Barnes and Rebecca Cannady cannot be brought under the ADA and Title VII because those statutes do not authorize suits against individual defendants. The Plaintiff shall have **30 days** to file an amended complaint, if he so chooses. The Court will enter an accompanying Order this day.

Entered this 31st day of March, 2025.


NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE