CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/6/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
        DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| FRANK VEGA, | CASE No. 6:24-CV-00020 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION AND ORDER |
| AMURCON REALTY COMPANY, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Amurcon Realty Company's (hereinafter, "Amurcon") motion to dismiss for failure to state a claim and motion for summary judgment. Dkts. 53, 61. In a prior ruling, the Court dismissed Plaintiff Vega's first and second amended complaints and granted him thirty (30) days to amend. Dkt. 50 at 48. Vega timely filed a third amended complaint (TAC) on April 30, 2025. Dkt 52.

In the TAC, Vega raises four claims: (i) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*; (ii) disability retaliation in violation of the ADA; (iii) wrongful discharge in violation of the ADA; and (iv) cat's paw liability.[1] Due to the following reasons, the Court will grant Amurcon's motion to dismiss with prejudice as to Count IV, and will deny as to Counts I, II, and III. Dkt. 53. The Court will dismiss as moot Amurcon's motion for summary judgment as to Count IV and will hold a summary judgment hearing. Dkt 61.

### STANDARD OF REVIEW

When brought under Fed. R. Civ. P. 12(b)(6), a motion to dismiss tests a complaint's

---

[1] Vega does not tie his fourth cause of action, cat's paw liability, to a statute. Dkt. 52 ¶¶ 101-14.

legal sufficiency and analyzes whether a plaintiff has stated a claim such that the court can grant relief. The complaint's "[f]actual allegations" must sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage of litigation, the Court must take a plaintiff's allegations as true and must draw all reasonable inferences in their favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). However, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted).

Although a complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" to survive a 12(b)(6) motion. *Twombly*, 550 U.S. at 555. Rule 12(b)(6) does not require "heightened fact pleading;" however, to survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## BACKGROUND

The facts alleged in Vega's TAC are accepted as true for the purposes of a motion to dismiss. Dkt. 52; *see Rubenstein*, 825 F.3d at 212.

Plaintiff Frank Vega is a 62-year-old Puerto Rican man with a disability caused by back surgery. Dkt. 52 ¶ 4. In January 2023, he applied for a job as a "maintenance worker" with Amurcon and was assigned to "the Wesley Apartments." *Id.* ¶ 8. Amurcon "scheduled [Vega] to work Mondays, Wednesdays, and Fridays, from 9:00am to 3:30pm." *Id.* ¶ 12. Rebecca Cannady and Michael Barnes supervised him. *Id.* ¶ 13.

Vega began work on January 18, 2023. Dkt. 52 ¶ 15. That same day, Vega informed Barnes that he could not lift objects heavier than thirty-five pounds, as he had a "disability related restriction" stemming from "lower back surgery in April 2021." *Id*. Barnes told Vega he could "sit in the office and rest his back" when necessary. *Id.* ¶ 16. Vega understood Barnes' offer to be a "reasonable accommodation" and accepted it. *Id.* ¶ 17.

On January 25, 2023, Vega "aggravated his lower back" while "picking up trash bags;" "informed Barnes of the incident;" and told Barnes that he "needed to sit down and take a break." *Id.* ¶¶ 23-24. Two days later, Vega yet again "informed Mr. Barnes that his lower back was . . . aggravated" and that "he would be sitting in the office resting." *Id.* ¶ 25.

Later that same day, Amurcon's office manager, Ms. Jody Vantassell, called Vega after his shift and terminated his employment "without warning." Dkt. 52 ¶ 26. Vantassell stated Amurcon needed to terminate Vega as "the company was going to go over their budget." *Id.* ¶ 33. Three days later, Amurcon replaced Vega "with a Caucasian male temp employee" at Cannady's request. *Id.* ¶ 34. After finding out about the replacement, Vega spoke with Vantassell a second time. *Id.* ¶ 36. She reported that Amurcon "didn't have any issues" with Vega's work, insisting it was a budget issue. *Id*. However, a few weeks later, Vantassell called Vega, apologized "for lying to him about his termination," and explained Amurcon terminated him for "doing too much talking and not enough work." *Id.* ¶¶ 42, 43.

During his employment with Amurcon, Vega received two notifications on a work-related phone application that said "Way to Go! You've received a great rating for your excellent work. Thanks for being a ROCK STAR!" Dkt. 52 ¶¶ 27, 31. Vega alleges these notifications show he received "excellent work ratings" and that he met Amurcon's "legitimate business expectations." *Id.* ¶¶ 64-65. Vega alleges "Amurcon would not have taken the discriminatory

3

actions against [him] but for his disability, and protected activity." *Id.* ¶ 55.

Vega alleges Barnes "failed to report" his disability to Cannady; "failed to report" his "accommodation" to Cannady; and "failed to report" his "minor injury" to Cannady. *Id.* ¶¶ 59-62. Vega alleges these failures demonstrate that Barnes "used his influence and leverage to convince Ms. Cannady to discharge [him] allegedly for 'poor performance.'" *Id.* ¶ 63.

Vega brought a complaint before the Court on April 24, 2024, alleging disability and racial discrimination, which Amurcon moved to dismiss for failure to state a claim. Dkts. 1, 8. In response, he filed first and second amended complaints, which Amurcon also moved to dismiss, and which the Court previously dismissed without prejudice. Dkts. 33, 37, 41, 50. Vega timely filed a third amended complaint, which Amurcon now moves to dismiss. Dkt. 53.

### ARGUMENT

#### A. Vega Alleges Sufficient Facts to State a Claim for Counts I, II, and III

##### 1. Vega's Alleged Facts Support a Reasonable Inference of Unlawful Disability Discrimination of Count I

In Count I, Vega brings a claim of disability discrimination. Dkt. 52 ¶¶ 69-77. Amurcon argues Count I fails as Vega does not allege facts sufficient to support a reasonable inference of unlawful disability discrimination.[2] Dkt. 54 at 6. The Court disagrees. To state a disability discrimination claim under the ADA, a plaintiff must allege facts sufficient to show: "(1) that [they] have a disability, (2) that [they are] a qualified individual for the employment in question, and (3) that [the employer] discharged [them] (or took other adverse employment action)

---

[2] The Court applies this argument to element three of the framework enumerated below as, at bottom, it is an argument regarding causation.

4

because of [their] disability."³ *See EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). The Court considers elements two and three.

The ADA defines qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that [they] hold or desire." 42 U.S.C. § 12111(8). Implementing regulations define "essential functions" as "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). At the motion to dismiss stage, "allegations [regarding] performance evaluations" are generally "sufficient to conclude" that a plaintiff has "adequately [pled] that [they were] a qualified individual for purposes of the ADA." *Gagnon v. Bd. of Educ. of Montgomery Cnty.*, 760 F. Supp. 3d 359, 370 (D. Md. 2024).

In the TAC, Vega alleges he "was able to perform the essential functions of the job in question . . . with or without an accommodation," and that he received "two (2) excellent work ratings" while employed. Dkt. 52 ¶¶14, 27, 64, 91. Amurcon's motion to dismiss fails to argue that Vega's alleged facts are insufficient to establish that he is a qualified individual. Therefore, the question of whether Vega is a qualified individual is not an issue in this case, and Vega has alleged sufficient facts to establish this element.

Turning to element three, if an employer's disability discrimination "was a motivating role in the employment decision," a plaintiff sufficiently states a claim and is "entitled to relief" under the ADA. *See Daye v. School Bd.*, 18 Fed. Appx. 125, 127 (4th Cir. Sep. 7, 2001) (unpublished); *Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). Comparator evidence that

---

³ Defendant Amurcon argues that, to state a disability discrimination claim, Vega must allege (i) he "was a qualified individual with a disability;" (ii) he suffered an adverse employment action; (iii) he "was fulfilling h[is] employer's legitimate expectations" at the time of the adverse action; and (4) the circumstances of the adverse action "raise a reasonable inference of unlawful discrimination based on [his] disability." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). Not so. Upon a close read of *Reynolds*, these elements are for disability discrimination based on wrongful termination under the ADA, which Vega raises as Count III in the TAC. Thus, the Court will apply the correct rule in its analysis.

"other employees were similarly situated to the plaintiff" and that "but for the protected characteristic were treated more favorably" can constitute "evidence of discriminatory motive." *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013).

Amurcon took adverse employment action against Vega when terminating him from his position. Dkt. 52 ¶ 78. Thus, the Court must analyze if Vega's disability played a "motivating role" in Amurcon's decision based on the facts he alleges. *Baird*, 192 F.3d at 470. Amurcon's conduct demonstrates it did.

After Vega's termination, Amurcon's office manager insisted on two separate occasions that Vega was terminated because "the company was going over their budget" and that Amurcon did not "have any issues with [Vega's] work. *Id.* ¶ 33, 36. However, Amurcon immediately replaced Vega with a different employee, showing that this reason was not truthful. *Id.* ¶ 34. Even further, Amurcon's office manager later "apologize[d] for lying to [Vega]" and admitted that the company terminated him for "doing too much talking and not enough work." *Id.* ¶ 43. These changing reasons, as well as the evidence of a new hire hint that Vega's disability played "a motivating role" in Amurcon's decision. *Baird*, 192 F.3d at 470. Amurcon's conduct thus provide a "causal link" between Vega's disability and his termination; Vega alleges sufficient facts to survive dismissal on Count I. *See Washington v. Offender Air & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 396 (W.D. Va. 2023).

   2. *Vega's Complaint Alleges Sufficient Facts to State a Claim for Retaliation Under the ADA*

In Count II, Vega raises a claim of disability retaliation. Dkt. 52 ¶¶ 78-86. Amurcon argues Vega's retaliation claim in the TAC fails as he did not "engage in protected activity by using his accommodation" and does not "bridge the causation gap." Dkt. 54 at 7-8. The Court disagrees and finds Count II survives dismissal.

To state a claim for disability retaliation, a plaintiff must allege facts sufficient to support a finding that: "(1) [they] engaged in protected conduct, (2) [they] suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). In the Fourth Circuit, requesting a reasonable accommodation is protected activity under the ADA *See Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015) ("Jacobs clearly engaged in protected activity by submitting a request for accommodation.").

Under the ADA, reasonable accommodations include "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). A plaintiff making a "generalized health complaint," such as having "been sick . . . due to the unhealthy conditions in [an] office building," is not considered to be making a reasonable accommodation request. *See Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 180 n.2 (4th Cir. 2023) (analyzing protected activity in failure to accommodate action). As such, "generalized health complaints" are not protected activity under the ADA. *Id.*

Upon being hired, Vega "informed Mr. Barnes of his . . . lower back surgery . . . and his disability related restrictions of a thirty-five (35) pound lifting limit, (sic) and bending." Dkt. 52 ¶ 15. Although Vega did not explicitly seek a reasonable accommodation, he asked for "job restructuring" and "modified" set of responsibilities; therefore, his conversation with Barnes qualifies as an ADA reasonable accommodation request. 42 U.S.C. § 12111(9)(B). Though Amurcon argues this conversation was merely a "generalized health complaint," Vega's conduct is distinguishable from what occurred in the *Lashley* case—namely, he made his request directly to a supervisor; he asked for a specific accommodation rather than just describing a medical

7

problem; and he pursued his request as ADA-protected activity. Dkt. 52 ¶¶ 15, 17, 22; 66 F.4th at 179-80. Thus, the line drawn by the Fourth Circuit in *Lashley* does not apply to Vega's conduct. 66 F.4th at 180 n.2. Vega alleges sufficient facts such that a reasonable fact finder could conclude he engaged in protected activity.

The Court now turns to the question of causation. When evaluating causation for retaliation claims, the Fourth Circuit requires plaintiffs to allege facts sufficient to establish that but for the protected activity, the adverse action would not have occurred. *See Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).[4] A plaintiff alleges causation by "showing that the adverse act bears sufficient temporal proximity to the protected activity;" causation is not "an onerous burden" at the motion to dismiss stage. *See Thomas v. City of Annapolis*, 851 Fed. Appx. 341, 350-51 (4th Cir. March 12, 2021) (unpublished); *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021). Courts find facts sufficient to allege causation through temporal proximity when very little time passes between the protected activity and the adverse action. *See e.g.*, *Wormuth*, 54 F.4th at 219 (finding gap of two months insufficient to prove temporal proximity and causation); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (same).

Here, Vega alleges he "engaged in protected activity" on "January 18, 2023" by informing "Mr. Barnes of his disability." Dkt. 52 ¶ 15. Amurcon fired Vega on "January 27, 2024." *Id.* ¶ 26. This ten-day gap is sufficient to allege causation through temporal proximity; it is well within the two-month period the Fourth Circuit has established for these claims.[5] As Vega

---

[4] The Fourth Circuit uses the standard from Title VII and the Rehabilitation Act when evaluating ADA claims. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001). As such, cases cited throughout this portion of the opinion are a mix of Title VII, Rehabilitation Act, and ADA claims.

[5] Amurcon relies on an unpublished Fourth Circuit and Eastern District of Virgina case in order to establish that temporal proximity is insufficient to allege causation. Dkt. 54 at 7, citing *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014); *Dimaano v. Va. Center for Behavioral Rehabilitation*, No. 3:23-cv-312, 2024 WL

8

has alleged sufficient facts for a reasonable fact finder to find protected activity, adverse action, and causation, Count II survives Amurcon's motion to dismiss.

### 3. Vega Alleges Sufficient Facts to Support a Reasonable Inference of Unlawful Disability Discrimination for Count III

In Count III, Vega raises a wrongful discharge claim under the ADA. Dkt. 52 ¶¶ 87-100. Amurcon asks the Court to dismiss Count III as it is "the same cause of action" as Count I. Dkt. 54 at 8. The Court disagrees and finds Count III survives dismissal.

To state a claim for wrongful discharge, a plaintiff must plead sufficient facts to establish "(i) [they were] a qualified individual with a disability; (ii) [they] suffered an adverse employment action; (iii) [they were] fulfilling[their] employer's legitimate expectations at the time of [the] discharge; and (iv) the circumstances of [their] discharge raise a reasonable inference of unlawful discrimination based on his disability." *Reynolds*, 701 F.3d at 150. An employee does not meet their employer's "legitimate expectations" when they "utter[ly] fail[] to attend to [their] assigned duties" or if their work is "substandard," such as "spending too much time on the phone" or "talk[ing] too much" instead of handling work duties. *See Runnebaum v. NationsBank of Maryland*, 123 F.3d 156, 174 (4th Cir. 1997); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 61 (4th Cir. 1995). When an employee is removed for "incompeten[ce]" or "lack of performance," courts find "no rational trier of fact could conclude" that their termination "raise[s] a reasonable inference of unlawful discrimination." *Runnebaum*, 123 F.3d at 175.

In the TAC, Vega alleges he "was able to perform the essential functions of the job" and that he "was meeting or exceeding Amurcon's legitimate business expectations" because he

---

3823795, at *15 (E.D. Va. Aug. 13, 2024). In the absence of binding authority, the Court concludes temporal proximity is sufficient to allege causation at the motion to dismiss stage.

9

received "two (2) excellent work ratings" from a cell phone applicaton. Dkt. 52 ¶¶ 27, 64, 91.[6] However, similarly to the issue with Count I, Amurcon's motion to dismiss fails to argue that Vega did not meet legitimate expectations. Therefore, the question of whether Vega met Amurcon's legitimate expectations is not an issue in this case, and Vega has alleged sufficient facts to establish this element.

Vega also alleges sufficient facts to support a "reasonable inference of unlawful discrimination. *Reynolds*, 701 F.3d at 150. According to Vega, Amurcon's reason for terminating Vega changed from budget concerns, which were later demonstrated to be false, to performance issues. *Id.* ¶¶ 33, 34, 43. Due to these changing reasons, as well as Vega's replacement with a different temp employee, "no rational trier of fact could conclude" that his termination does not "raise[s] a reasonable inference of unlawful discrimination." *Id.* ¶ 33; *Runnebaum*, 123 F.3d at 175. As such, Vega pleads sufficient facts to establish the fourth element of Count III. Count III survives dismissal.

### B. Count IV Fails as Vega Does Not Allege a Cause of Action

In Count IV, Vega raises a claim for cat's paw liability—alleging that "Amurcons (sic) maintenance assistant used his influence and leverage to convince Amurcons (sic) manager to discharge" him for "poor performance." Dkt. 52 ¶ 104. Amurcon, in turn, argues cat's paw liability "is not an independent cause of action" and therefore must be dismissed. Dkt. 54 at 9-10. The Court agrees.

Cat's paw liability imposes liability on a formal decisionmaker who "rubber-stamps" a discriminatory "decision, report, or recommendation actually made by a subordinate." *See Hill v. Lockheed Martin Logistics Mgmt. Inc.*, 354 F.3d 277, 290 (4th Cir. 2004). A "cat's paw" liability

---

[6] The notifications read as follows: "Way to Go! You've received a great rating for your excellent work. Thanks for being a ROCK STAR!" Dkt. 52 ¶ 27.

case "cannot succeed unless the nondecisionmaker exercises such a 'singular influence' over the decisionmaker that the decision to terminate was the product of 'blind reliance.'" *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415-16 (2011). Cat's paw liability may be used to establish liability "if a plaintiff fails to establish a Title VII claim by direct evidence or by the *McDonnell Douglas* test." *Ashanti v. City of Richmond Sch. Bd.*, 2023 WL1110300, at *9 (E.D. Va. Jan. 30. 2023). It is not a cause of action.

Vega does not state a claim for Count IV as cat's paw is merely a theory of liability. Without a cognizable cause of action, independent theories of liability fail. *See, e.g.*, *J.R. v. Walgreens Boot All.*, 2021 WL 4859603, at *2 n.2 (4th Cir. Oct. 19, 2021) (unpublished) (finding respondeat superior claim fails as it "is not a cause of action; it is a theory of liability.").

Further, even if Vega alleged a cognizable cause of action, his alleged facts do not support a finding of cat's paw liability. Vega alleges that Barnes "used his influence and leverage to convince Amurcons (sic) manager to discharge [him] for allegedly 'poor performance.'" Dkt. 52 ¶ 104. Vega alleges that, because he received "two (2) excellent work ratings," and because the "second rating" was "the same day [Cannady] was influenced by [Barnes] . . . to wrongfully discharge" him, Amurcon's "wrongful discharge was pretextual" and "demonstrate[s] a Cat's Paw liability." *Id.* ¶¶ 105, 107, 108. However, Vega's complaint is completely devoid of facts supporting these legal conclusions.

On his first day of work, Vega alleges he "inform[ed] [Barnes] of his disability." Dkt. 52 ¶ 15. He alleges Barnes "offer[ed] him an accommodation," which he accepted and used on January 25 and 27, 2023. *Id.* ¶¶ 16-17, 23, 25. Vega never alleges Barnes held discriminatory animus against him, lobbied for his termination, or exercised such "singular influence" over

Cannady that her decision to remove Vega could be attributed to him. *Staub*, 562 U.S. at 415-16. Indeed, in the TAC, Vega fails to allege a single conversation between Barnes and Cannady.

As such, Vega does not allege facts sufficient to state a claim for cat's paw liability. Because amendment could not cure Count IV's issues, the Court will dismiss it with prejudice. *See Crawford v. Senex Law PC*, 259 F. Supp. 3d 464, 475 (W.D. Va. 2017) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)) (counseling against denying a plaintiff's leave to amend unless "such leave would cause undue prejudice to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.").

## CONCLUSION

For the above-stated reasons, Amurcon's motion to dismiss for failure to state a claim is **GRANTED with prejudice** as to Count IV and is **DENIED** as to Counts I, II, and III. Dkt. 53. Amurcon's motion for summary judgment is **DISMISSED AS MOOT** as to Count IV. Dkt. 61. The parties are directed to contact the Clerk's office for scheduling of a summary judgment hearing.

It is **SO ORDERED**.

The Clerk's office is hereby directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered this the 6th day of November, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE