CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

11/20/2025

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| FRANK VEGA,<br><br>　　　　　　　　*Plaintiff*,<br>v.<br><br>AMURCON REALTY COMPANY,<br><br>　　　　　　　　*Defendant.* | CASE NO. 6:24-CV-00020<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Amurcon Realty Company's (hereinafter "Amurcon") motion for summary judgment. Dkt. 61. Previously, the Court held Vega stated a claim for three causes of action: (i) disability discrimination in violation of the Americans with Disabilities Act (ADA); (ii) retaliation in violation of the ADA; and (iii) wrongful termination in violation of the ADA. Dkt. 77 at 12. Amurcon now moves for summary judgment, arguing no genuine issues of material facts exist in the case. Dkt. 61. For the following reasons, and in an accompanying order, the Court will grant Amurcon's motion for summary judgment. *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate where a case has "no genuine dispute as to any material fact" and if "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is material "if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). A dispute is "genuine if a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.*

Any party can move for summary judgment following the conclusion of discovery; yet the moving party bears the burden and must establish that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on allegations in the pleadings; rather, it must present sufficient evidence so that a reasonable fact finder could find disputed facts in their favor. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). At summary judgment, the district court evaluates claims using a preponderance of the evidence standard. *Sylvia Dev. Corp.*, 48 F.3d at 818. The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

## BACKGROUND

Plaintiff Frank Vega is a 62-year-old Puerto Rican man with a disability caused by back surgery. Dkt. 52 ¶ 4. Starting in December 2022, Vega worked for "PeopleReady Inc.," "an at-will temporary employe[r]" who placed him at various temporary jobs. *Id.* ¶ 7. PeopleReady placed Vega "as a part-time maintenance worker" at "the Wesley Apartments," a complex owned by Amurcon. *Id.* ¶ 8.

On his first day of work, Vega met Mike Barnes, whom Amurcon states was a "maintenance assistant" with "no supervisory authority." Dkt. 62-1 ¶ 13. Vega alleges immediately telling Barnes that he had a "disability related restriction" and could not lift objects heavier than 35 pounds. Dkt. 52 ¶ 13. Barnes told Vega he could "sit in the office and rest his back" when necessary; Vega understood this to be a "reasonable accommodation" offer and

2

accepted it. *Id.* ¶¶ 16, 17.

During Vega's employment, Amurcon argues "Cannady supervised Vega;" Cannady "regularly dictated [Vega's] work, including giving him assignments for the day;" and Cannady "made it clear that [Vega] would report to her for assignments." Dkt. 62-1 ¶¶ 11-12. She asked Vega to handle tasks such as "updating a vacant unit so that Amurcon could get it ready to rent" and to "place magnets on each of the apartments' doors." *Id.* ¶ 12.

On January 25, 2023, Vega alleges he "aggravated his lower back" while "picking up trash bags;" "informed Barnes of the incident;" and told Barnes that he "needed to sit down and take a break." *Id.* ¶¶ 23-24. Two days later, Vega yet again "informed Mr. Barnes that his lower back was . . . aggravated" and that "he would be sitting in the office resting." *Id.* ¶ 25. Cannady alleges she "learned from Mr. Barnes that [Vega] was regularly on his phone" and was "unwilling to work independently . . . need[ing] Mr. Barnes to work alongside him." Dkt.62-1 ¶ 14. Because of these issues, she "called her contact at PeopleReady" and "asked that they provide a different placement" for Vega. *Id.* ¶ 15. Cannady states she "did not tell PeopleReady that Amurcon was removing Mr. Vega's position because of budget cuts." Dkt. 62-1 ¶ 15.

Later that same day, "PeopleReady employee Jody Vantassell" called Vega after his shift and terminated his employment "without warning." Dkt. 52 ¶ 26; Dkt. 62-1 ¶ 17. Vega alleges Vantassell said Amurcon terminated him because "the company was going to go over their budget." Dkt. 52 ¶ 33. A few weeks later, Vega alleges another call where Vantassell apologized "for lying to him about his termination," and explained Amurcon terminated him for "doing too much talking and not enough work." *Id.* ¶¶ 42, 43.

During his "five (5) shifts" with Amurcon, Vega received two notifications on a work-related phone application that said "Way to Go! You've received a great rating for your excellent

3

work. Thanks for being a ROCK STAR!" Dkt. 52 ¶¶ 27, 31; Dkt. 62-1 ¶ 21. Vega alleges these notifications show he received "excellent work ratings" from Amurcon. *Id.* ¶¶ 64-65. On behalf of Amurcon, Cannady asserts that she "never sent Mr. Vega text or Slack messages regarding his work performance," and that these alleged notifications "did not originate from [her] or anyone else at Amurcon." Dkt 62-1 ¶ 17. Vega alleges asking Vantassell if "the rating [came]from Ms. [Cannady] Amurcon Management," and Vantassell replied "yes it came from her." Dkt. 52 ¶ 38.

Vega brought a complaint before the Court on April 24, 2024, alleging disability and racial discrimination, which Amurcon moved to dismiss for failure to state a claim. Dkts. 1, 8. In response, Vega filed first and second amended complaints, which Amurcon also moved to dismiss, and which the Court dismissed without prejudice. Dkts. 33, 37, 41, 50. Vega timely filed a third amended complaint, which Amurcon also moved to dismiss. Dkts. 52-53. The Court granted Amurcon's motion to dismiss for one of his four causes of action with prejudice. Dkt. 77. Amurcon now moves for summary judgment on the remaining three counts. Dkt. 61.

## ARGUMENT

### A.  Ms. Cannady's Declaration is Admissible

In support of its motion for summary judgment, Amurcon relies on a declaration from Rebecca Cannady, the property manager for the Woods at James Crossing Apartments. Dkt. 62-1. This affidavit primarily establishes Amurcon's concerns with Vega's performance. *Id.* ¶ 14. Vega, however, disputes the use of this affidavit and asks the Court to exclude it arguing it "lacks personal knowledge and is based on hearsay," thus violating Federal Rule of Civil Procedure 56(c)(4). Dkt. 72 ¶ 29. The Court will consider each argument in turn.

Affidavits offered in support of summary judgment must be "made on personal knowledge;" must "set out facts that would be admissible in evidence;" and must "show that the

affiant . . . is competent to testify." Fed. R. Civ. Proc. 56(c)(4). In order to demonstrate an affiant's personal knowledge, an affidavit must contain "an affirmative showing" of personal knowledge or "specific facts" demonstrating personal knowledge to comply with Rule 56. *See Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972) (per curiam). Employees providing a "description of [their] job titles and duties" state "sufficient information" to establish "personal knowledge." *See Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002). Without personal knowledge, a court cannot consider an affidavit for purposes of summary judgment. *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008).

In her affidavit, Cannady states she is "employed by Amurcon Realty Company and ha[s] been since 2020;" that she "supervised Mr. Vega" and "regularly directed his work;" and that she "made clear" Vega would "report to [her] for his assignments." Dkt. 62-1 ¶¶ 1, 11, 12. These "specific facts" demonstrate Cannady's personal knowledge regarding Vega's assignments and Amurcon's legitimate business expectations. She offers "a description of [her] job title[] and duties," thus alleging "sufficient information" that she has "personal knowledge" of the information contained in her affidavit. *See Bryant*, 288 F.3d at 135 n.9.

According to the Fourth Circuit, summary judgment affidavits cannot be conclusory or based on inadmissible hearsay. *See Rohrbough v. Wyeth Labs. Inc.*, 916 F.2d 970, 974-76 n.8 (4th Cir. 1990). An affidavit is based on hearsay when it contains statements made by out-of-court declarant "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). However, if a statement is offered for some other purpose, it is not hearsay. *Anderson v. United States*, 417 U.S. 211, 219 (1974).

Amurcon argues that Cannady's declaration is not hearsay as it is offered to prove "Ms. Cannady's perception . . . that [Vega] was not performing his job duties." Dkt. 75 at 3-4.

5

Amurcon further argues that Cannady's perception is "what matters" in "determining whether [Vega] has been discriminated against, so Cannady's declaration is not being offered to determine if Vega performance was actually deficient." *Id.* The Court agrees.

When determining questions employer discrimination, the Fourth Circuit largely bases its inquiry on the "perception of the decision-maker." *See Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (quoting *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)). An employee's actual conduct, or an employee's self-perception of their conduct, is not at issue in many Title VII cases; indeed, courts frequently do not even analyze "whether the reason [for termination] was wise, fair or even correct, ultimately, so long as it was the reason for the plaintiff's termination." *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 21998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997)).

Cannady's affidavit, specifically paragraphs 14 and 15, describe her perceptions of Vega's performance. Dkt. 62-1. She reports while she "initially believed Mr. Vega was adequately completing his tasks," further investigation led her to conclude "Mr. Barnes was completing much of Vega's work." *Id.* Her statements are "an explanation of why [she] believed that terminating [his] employment was necessary and appropriate;" therefore, "evidentiary rules governing the consideration of hearsay are not implicated" by Cannady's affidavit. *See Arrington v. E.R. Williams, Inc.*, 490 Fed. Appx. 540, 543 (4th Cir. 2012) (quoting *Royall v. Nat'l Ass'n of Letter Carriers*, 507 F. Supp. 2d 93, 98 n.10 (D.D.C. 2007)).

As Cannady's affidavit is both supported by her personal knowledge and is not hearsay, the Court considers it when ruling on Amurcon's motion for summary judgment.

### B. Vega Fails to Demonstrate Amurcon's Legitimate Reasons for His Termination are Pretext

The Court previously held that Vega alleged sufficient facts to state a claim for disability discrimination, retaliation, and wrongful discharge under the ADA. Dkt. 77 at 12. However, on summary judgment, the burden shifting framework of *McDonnell-Douglas* applies, heightening Vega's burden. 411 U.S. 793, 807 (1973).[1] According to this framework, Vega must first state a "prima facie case" of discrimination. *Id.* Next, Amurcon must offer a "legitimate, non-discriminatory reason" for its actions. *Id.* Finally, Vega must demonstrate that Amurcon's alleged facts are pretext for disability discrimination. *Id.* Amurcon argues Vega does not offer facts showing that discrimination was the but-for cause of his termination, thus failing to establish that the reason given for his termination was pretext. Dkt. 62 at 11-12, 14-25. The Court agrees, and therefore, will grant Amurcon's motion for summary judgment in an accompanying order.

As Vega's three claims contain similar allegations and issues, the Court chooses to analyze them together. First, the Court considers whether Vega has alleged a prima facie case of discrimination for his claims. *McDonnell-Douglas*, 411 U.S. at 807. Because the Court has very recently published an opinion holding that Vega stated a claim upon which relief could be granted for all three claims, the Court adopts that analysis here and concludes Vega has satisfied the first step of the *McDonnell-Douglas* framework. Dkt. 77 at 4-10; 411 U.S. at 807.

The burden then shifts to Amurcon to offer "reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the

---

[1] Although McDonnell-Douglas was decided in a Title VII context where plaintiff alleged racial discrimination, the Fourth Circuit applies the framework to disability discrimination claims arising under the ADA. *See, e.g., Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572-578 (4th Cir. 2015); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).

employment action." *See Anderson v. Diamondback Inv. Grp. LLC*, 117 F.4th 165, 177 (4th Cir. 2024) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). Amurcon alleges Vega "did not perform the job duties Amurcon needed;" that he created more work for Mr. Barnes;" that he had an "inability to work independently;" and that he "would be consistently found sitting on his phone instead of working. Dkt. 62-1 ¶ 14. Each of these reasons, offered independently, supports a "finding that unlawful discrimination" was "not the cause" of Amurcon's decision to terminate Vega from his position. *Anderson*, 117 F.4th at 177. Thus, taking them all together, Amurcon has satisfied the second step of the *McDonnell-Douglas* framework. 411 U.S. at 807.

Vega must then "prove" that Amurcon's "asserted justification" are pretextual, meaning they are "post hoc rationalizations invented for the purposes of litigation." *See Jacobs*, 780 F.3d at 575-76. Vega must allege that discrimination was the "but-for cause" of his termination to demonstrate pretext. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). Generally, an employer's inconsistent reasons for terminating an employee are "probative of pretext." *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001).

Vega argues Amurcon's reasons are pretextual for the same two reasons—because "Amurcon first allege[d] that [his] discharge was for budget cuts, then Amurcon later changed their rationale to 'job performance;'" and because he received "two (2) excellent work ratings from the same supervisor (Cannady) who wrongfully discharged [him]." Dkt. 60 ¶¶ 87, 90. Neither argument is sufficient to establish pretext under *McDonnell-Douglas*. 411 U.S. at 807.

Vega first alleges Vantassell's changing reasons for Amurcon's termination, from "budget cuts" to job performance demonstrates pretext. Dkt. 52 ¶¶ 32, 33, 42, 43; Dkt. 60 ¶ 90; Dkt. 62 ¶ 25. However, PeopleReady employed Vantassell, not Amurcon. Dkt. 62-1 ¶ 25.

8

Further, according to Amurcon "Ms. Cannady [never told] PeopleReady that Amurcon was removing [Vega's] placement because of budget cuts." *Id.* ¶ 16. Thus, according to Amurcon, its reason for Vega's termination was always that Vega "did not meet . . . performance expectations." *Id.* ¶ 15. In response, Vega argues that Cannady's denial is a "fabricated story" meant to "cover up the disability discrimination and wrongful termination." Dkt. 72 at 10.

Vega next alleges that he was "performing [his] job at a level that met Amurcons (sic) legitimate expectations" because he received "two notifications on a work-related phone application that said "Way to Go! You've received a great rating for your excellent work. Thanks for being a ROCK STAR!" Dkt. 52 ¶¶ 27, 31. According to Amurcon, "Cannady never sent [Vega] text or Slack messages regarding his work performance" and the "alleged messages . . . did not originate from [her] or anyone else at Amurcon." Dkt. 62-1 ¶ 17. Vega alleges asking Vantassell if "the rating [came] from Ms. [Cannady] Amurcon Management (sic)," and the she replied "yes it came from [Cannady];" however, Vega offers no evidence that the messages came from Cannady and admits that the messages came from the PeopleReady JobStack Application. Dkt. 52 ¶ 38; Dkt. 60 ¶ 21 ("This notification was received through PeopleReady/JobStack APP on my cell phone.").

Despite his arguments, the "totality of the circumstances" does not establish that "a factfinder could conclude . . . [Amurcon's] 'asserted justification is false.'" *See Sears*, 243 F.3d at 852-53. Amurcon never changed its reason for terminating Vega—any change in reason is attributable to Vantassell and PeopleReady only. Vega's allegation that a conspiracy existed between Cannady and Vantassell is completely unsupported in both his complaint and the rest of the briefing. Further, a reasonable fact finder could not interpret seemingly automatic phone notifications from a work application as "excellent work ratings," especially when viewed in the

9

light of Vega's limited employment. Because Vega's arguments fail to establish that Amurcon's alleged disability discrimination was the but-for cause of his termination, he fails to establish pretext under the *McDonnell-Douglas* factors. 411 U.S. at 807; *Celotex Corp.*, 477 U.S. at 322–24; *Sylvia*, 48 F.3d at 818.

## CONCLUSION

For the above reasons, the Court will **GRANT** Amurcon's Motion for Summary Judgment in an accompanying order. Dkt. 61.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this the  20th   of November, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE